FILED

1 | Ramon Rossi Lopez, Bar No. 86361
2 | Matthew Ramon Lopez, Bar No. 263134
  | **LOPEZ McHUGH LLP**
3 | 100 Bayview Circle, Suite 5600
  | Newport Beach, CA 92660
4 | Telephone: (949) 737-1501
  | Facsimile: (949) 737-1504
5 | rlopez@lopezmchugh.com
6 | mlopez@lopezmchugh.com

2013 APR 17  PM 4: 27

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

7 | Harris L. Pogust (for *pro hac vice* consideration)
8 | T. Matthew Leckman (for *pro hac vice* consideration)
  | **POGUST BRASLOW & MILLROOD, LLC**
9 | Eight Tower Bridge, Suite 1520
  | 161 Washington Street
10 | Conshohocken, PA  19428
11 | Telephone: (610) 941-4204
  | Facsimile:  (610) 941-4245
12 | hpogust@pbmattorneys.com
  | mleckman@pbmattorneys.com
13 |
14 | Attorneys for Plaintiff CLAUDIA HERRERA and
  | PETER LOWRY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA HERRERA and PETER LOWRY, <br><br> Plaintiff, <br><br> vs. <br><br> ELI LILLY AND COMPANY, a corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: **CV13-02702-GW (PSWx)** <br> Judge: <br> Department: <br><br> **COMPLAINT** <br><br> **1. NEGLIGENCE** <br> **2. STRICT PRODUCT LIABILITY – DESIGN DEFECT** <br> **3. STRICT PRODUCT LIABILITY – FAILURE TO WARN** <br> **4. STRICT PRODUCT LIABILITY** <br> **5. NEGLIGENT MISREPRESENTATION** <br> **6. FRAUD** <br> **7. BREACH OF IMPLIED WARRANTY** <br> **8. VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17200, *et seq.*** <br> **9. LOSS OF CONSORTIUM** |

-1-

COME NOW Plaintiffs, Claudia Herrera and Peter Lowry, by and through undersigned counsel, and for their causes of action file this Complaint for damages against the above-named Defendant alleging the following:

## INTRODUCTION

1. This is a civil action for products liability alleging personal injuries and damages, including serious and life-threatening withdrawal symptoms, suffered by Plaintiff Claudia Herrera as a direct and proximate result of her ingestion and cessation of the prescription drug, Cymbalta (duloxetine), which is manufactured, marketed, and sold by Defendant Eli Lilly and Company (hereinafter, "Defendant" or "Lilly").

## PARTIES

2. Plaintiffs Claudia Herrera and Peter Lowry (hereinafter, "Plaintiffs") are, and at all times relevant to this Complaint were, citizens of the State of California and residents of Los Angeles County.

3. Defendant Eli Lilly and Company is, and at all times relevant to this Complaint was, an Indiana corporation with its headquarters in Indianapolis, Indiana. Lilly is a pharmaceutical company involved in the research, development, testing, manufacture, production, promotion, distribution, marketing and sale of numerous pharmaceutical products, including Cymbalta, a prescription antidepressant drug.

4. Plaintiffs do not know the true names and identities of those defendants designated as DOES 1 through 50, inclusive, but alleges that each of said fictitiously named defendants was negligently and unlawfully responsible for the events herein described, and for the injuries and damages sustained by Plaintiffs, CLAUDIA HERRERA and PETER LOWRY, and Plaintiffs will ask leave of court to amend this complaint when the identity of each such fictitiously named defendant has been ascertained

5. At all relevant times, each of the Defendants and their directors and officers acted within the scope of their authority. During the relevant times, Defendants possessed a unity of interest between themselves. As such, each Defendant is individually, as well as jointly and severally, liable to Plaintiffs for Plaintiffs' damages.

-2-

COMPLAINT

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Lilly insofar as Lilly is authorized and licensed to conduct business in California, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits of this judicial district.

7.      Furthermore, Lilly has caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

8.      This Court has subject matter jurisdiction in the form of diversity jurisdiction, pursuant to 28 U.S.C.A. § 1332, in that there is a complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00.

9.      Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

10.      Lilly is one of the largest pharmaceutical companies in the world with annual revenues exceeding $20 billion. A substantial portion of Lilly's sales and profits have been derived from its drug Cymbalta, whose 2009 annual sales exceeded $3 billion, making it the second most profitable drug in Lilly's current product line.

11.      Lilly has enjoyed considerable financial success from manufacturing and selling prescription drugs for the treatment of clinical depression, including the popular antidepressant Prozac (generically known as fluoxetine).  Lilly launched Prozac in 1988 touting it as the first "Selective Serotonin Reuptake Inhibitor" ("SSRI"). SSRIs are a class of antidepressant drugs that were promoted as increasing the brain chemical serotonin in the synaptic clefts between the neurons in the brain.  It has been theorized that reduced levels of serotonin cause depression; however, recent studies have undermined this theory.  Prozac became extremely popular in the 1990s and was the top-selling antidepressant of its kind. Prozac's patent expired in August 2001.

12.      In 2001, Lilly needed to fill the void left behind by Prozac's patent expiration, and so it sought approval by the Food and Drug Administration's ("FDA") for its next antidepressant, Cymbalta.

Unlike Prozac, Cymbalta is a "Serotonin-Norepinephrine Reuptake Inhibitor" ("SNRI"), which Lilly promoted as increasing the brain chemicals serotonin and norepinephrine in the synaptic clefts between the neurons in the brain.  Lilly and other SNRI manufacturers admit that the precise mechanism of action is not clear, however, they have promoted the drugs by stating that higher levels of these neurotransmitters somehow improve and elevate mood.

13.    In 2003, the FDA initially rejected Lilly's application to approve Cymbalta due to certain violations of good manufacturing practices and the risk of liver toxicity apparent in the drug's safety profile.

14.    Eventually, in 2004, manufacturing issues were resolved and the FDA approved Cymbalta with a liver toxicity warning included in the prescribing information.  The drug was approved for Major Depressive Disorder ("MDD").   In 2007, the FDA approved Cymbalta for treatment of Generalized Anxiety Disorder ("GAD") and in 2008 for treatment of fibromyalgia.

15.    Since the FDA's initial approval of Cymbalta in 2004, Lilly has aggressively marketed the drug to the public and the medical community, spending hundreds of millions of dollars each year on advertising and promotion.  Lilly has promoted Cymbalta directly to consumers, including Plaintiff, through all major media channels, including internet, print and television.   In addition, Lilly has promoted Cymbalta to the medical community by utilizing its well-organized army of sales representatives to personally visit physicians and health care professionals to distribute free drug samples and promotional literature. Lilly further promoted Cymbalta through advertisements in medical journals and presenting talks and exhibits at medical conferences.

16.    Lilly's promotional campaigns have continuously overstated the efficacy of Cymbalta and understated, downplayed, and/or failed altogether to state the true withdrawal side effects associated with Cymbalta.

17.    Presently and at all times material herein, the Cymbalta label provided the following precaution regarding discontinuation: "Discontinuation symptoms have been systematically evaluated in patients taking duloxetine. Following abrupt or tapered discontinuation in placebo-controlled clinical trials, the following symptoms occurred at a rate greater than or equal to 1% and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea,

headache, fatigue, paresthesia, vomiting, irritability, nightmares, insomnia, diarrhea, anxiety, hyperhidrosis and vertigo...."

18. In addition to using the euphemistic term "discontinuation" to describe withdrawal side effects, Lilly also made it appear that such discontinuation symptoms were rare and only affected approximately 1% of Cymbalta users.

19. To the contrary, according to a January 2005 article published in the Journal of Affective Disorders, Lilly's Cymbalta clinical trials showed that a significant percentage (44.3%) of Cymbalta patients suffered from "discontinuation" side effects. David G. Peahia et al., Symptoms Following Abrupt Discontinuation of Duloxetine Treatment in Patients with Major Depressive Disorder, 89 JOURNAL OF AFFECTIVE DISORDERS 207 (2005). In this published, peer-reviewed paper, the withdrawal side-effect rates for Cymbalta were nearly double that experienced by placebo users, and these findings were statistically significant. Accordingly, the rate of withdrawal or "discontinuation" for Cymbalta (as established by Lilly's clinical trials) was 44.3%, yet in its packaging label, Lilly misleadingly presented this rate as approximately 1%.

20. Moreover, Lilly's clinical trials showed that, overall, 9.6% of Cymbalta users suffered *severe* withdrawal side effects, yet nowhere in the label does Lilly inform practitioners and patients of that risk.

21. Cymbalta's withdrawal side effects include, among other things, headaches, dizziness, nausea, fatigue, diarrhea, paresthesia, vomiting, irritability, nightmares, insomnia, anxiety, hyperhidrosis, sensory disturbances, electric shock sensations, seizures and vertigo. When patients try to stop taking Cymbalta, the side effects can be severe enough to force them to start taking Cymbalta again, not to treat their underlying condition, but simply to stop the withdrawal symptoms. Patients thus become prisoners to Cymbalta, and Lilly financially benefits by having a legion of physically dependent, long-term users of Cymbalta.

22. Notwithstanding Lilly's knowledge of the high rate of withdrawal symptoms in patients stopping Cymbalta, Lilly failed to adequately, properly, and fully warn patients and physicians about the risk.

23.    Instead, in its product labeling, marketing and advertising, and in information made available to consumers and physicians, Lilly reported a far lower risk, downplayed any difference in the withdrawal risk for Cymbalta as compared to other similar antidepressants, and affirmatively misled the consuming patient population and mischaracterized the drug's risk profile.

24.    In addition to failing to adequately warn about the actual rate and severity of withdrawal side effect risks, Lilly also overplayed the efficacy of Cymbalta.  Seeking to capture a greater segment of the antidepressant market, in 2005, Lilly initiated the direct-to-consumer marketing campaign: "Depression hurts. Cymbalta can help." Cymbalta advertisements bearing this slogan appeared ubiquitously on television, in print and on the internet. Lilly's advertising campaign made it appear that Cymbalta not only treated depression but that it also treated physical pain associated with depression. Scientists reviewing the Cymbalta data have concluded that Lilly's claims are misleading.  For example, in a 2008 article published in Psychotherapy and Psychosomatics, the author concluded that "the marketing of duloxetine as an antidepressant with analgesic properties for people with depression does not appear to be adequately supported."

25.    Lilly has also augmented its misleading advertising campaigns by engaging in selective and biased publication of its clinical trials of Cymbalta.  By way of example, Lilly has generally published only favorable studies of its Cymbalta clinical trials and refused to publish any of the negative and unfavorable studies. Such selective publication of clinical trial data gives the impression that the drug is safer and more effective than it actually is.  In a recent study published in the New England Journal of Medicine, researchers obtained clinical trials for antidepressants (including Cymbalta) that had been submitted to the FDA and compared them with studies that had been published.  The authors found that there was a "bias towards the publication of positive results" and that, "according to the published literature, it appeared that 94% of the trials conducted were positive. By contrast, the FDA analysis shows that 51% were positive." The authors found that, as a result of such selective publication, the published literature conveyed a misleading impression of Cymbalta's efficacy resulting in an apparent effect-size that was 33% larger than the effect size derived from the full clinical trial data. See Erick H. Turner et al., Selective Publication of Antidepressant Trials and Its Influence on Apparent Efficacy, 358 NEW ENG. J. MED. 252 (2008).

26.     Lilly's misleading direct-to-consumer promotional campaigns, its misleading presentation of Cymbalta's efficacy and its failure to adequately warn regarding Cymbalta's withdrawal and dependency side effects have paid off financially for Lilly.  Cymbalta has become a "blockbuster" drug with over $3 billion dollars in annual sales. In the past few years, Cymbalta has been the second most profitable drug in Lilly's product line.  Coincidently, the only drug ahead of Cymbalta is Zyprexa, an antipsychotic drug that Lilly promoted illegally.  Indeed, in 2009, Lilly agreed to plead guilty and pay $1.415 billion to the federal government for illegally promoting Zyprexa.  This resolution included a criminal fine of $515 million, which, at the time, was the largest settlement ever in a health care case, and the largest criminal fine for an individual corporation ever imposed in a United States criminal prosecution of any kind.

27.     Lilly had the knowledge, the means and the duty to provide adequate warnings regarding Cymbalta's common and severe withdrawal and dependency side effects as well as a duty to honestly portray the safety and efficacy of Cymbalta.  Lilly could have relayed these warnings through the same means it utilized to advertise its products, which included but are not limited to its labeling, "Dear Doctor letters," advertisements and sales representatives.

28.     In October 2012, the Institute for Safe Medication Practices (ISMP), a non-profit healthcare consumer safety watchdog, issued findings from its independent investigation of Cymbalta adverse events found in the FDA Adverse Event Reporting System (FAERS).  *See* QuarterWatch, *Monitoring FDA MedWatch Reports*, Why Reports of Serious Adverse Drug Events Continue to Grow, Oct. 3, 2012, ISMP.

29.     The report announced that the investigation uncovered "a signal for serious drug withdrawal symptoms associated with duloxetine (CYMBALTA)," and detailed for the public what Lilly has long known: "[W]ithdrawal symptoms were reported in 44-50% of patients abruptly discontinuing duloxetine at the end of clinical studies for depression, and more than half of this total did not resolve within a week or two." *Id.* at 11

30.     The ISMP report continued: "[W]e identified a serious breakdown at both the FDA and the manufacturer, Eli Lilly and Company, in providing adequate warnings and instructions about how to manage this common adverse effect."  *Id.*

-7-

31.     Explaining the lack of adequate warnings, the ISMP stated:

Instead of clear warnings and useful instructions, the duloxetine patient
Medication Guide says only:

> "Never stop an antidepressant medicine without first talking to a
> healthcare provider.  Stopping an antidepressant medicine
> suddenly can cause other symptoms."

This FDA-approved patient guide is materially deficient.  It gives no hint of the
persistence or severity of the symptoms known to occur.

….

We could not identify any FDA-approved or company information for patients
about how to discontinue duloxetine.  *Id.* at 12-13.

32.     In conclusion, the report minced no words in its indictment of Lilly's product
information: "A major lapse has occurred in the FDA-approved information for patients about the risks
of stopping duloxetine."  *Id.* at 15.

33.     Falsely reassured by the misleading and deceptive manner in which Lilly reported
Cymbalta's withdrawal risk, physicians, including Plaintiff's physician, have prescribed, and continue to
prescribe, Cymbalta to patients without adequate, accurate and proper warnings relating to
discontinuation of the drug.

34.     In or about 2006, Plaintiff was prescribed Cymbalta by her physician, for treatment of
anxiety.

35.     On or about March 3, 2012, Plaintiff was experiencing unusual weight gain and blurred
vision.  As a result, Plaintiff's prescribing doctor advised her to gradually lessen her ingestion of
Cymbalta over a period of thirty days until she ceased all ingestion.

-8-

COMPLAINT

36.     Upon attempting to discontinue Cymbalta, Plaintiff experienced severe and dangerous withdrawal symptoms including sharp, painful zaps of electricity shooting through her head.  She also experienced extreme anxiety and fear, stomach pains, and suicidal ideation.  Additionally, Plaintiff had uncontrollable muscle spasms, felt as if there were objects crawling inside of her skin, hot flashes, and body shivers.

37.     Presently, Plaintiff continues to suffer symptoms of withdrawal, including but not limited to brain zaps and muscle spasms.

38.     At all times relevant, Lilly knew or should have known that Cymbalta was in a defective condition and was and is inherently dangerous and unsafe when used in the manner instructed and provided for by Lilly.

39.     At all times relevant, Lilly knew or should have known of the significantly increased risk of withdrawal symptoms, including their severity and duration, posed by Cymbalta and yet failed to adequately warn about said risks.

40.     At all times relevant, Lilly engaged in a willful, wanton, and reckless conduct, including its defective design of Cymbalta, its failure to warn about Cymbalta's risks, and its pattern of affirmative misrepresentations and omissions relating to the safety and efficacy of Cymbalta.  It overstated the drug's efficacy, downplayed withdrawal side effects, and misstated the actual risk and severity of side effects, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff and her physicians.

41.     Plaintiff's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to Cymbalta.

42.     If Lilly had adequately, accurately and properly warned about the withdrawal risk associated with Cymbalta, including the high risk of experiencing them and their frequency and severity, Plaintiff's physician would not have prescribed the drug to Plaintiff; Plaintiff would have refused the drug; and/or Plaintiff's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

-9-

COMPLAINT

43.   As a direct and proximate result of taking Cymbalta, Plaintiffs suffered compensable injuries, including but not limited to the following:

a.   physical, emotional, and psychological injuries;

b.   past and future pain and suffering;

c.   past and future mental anguish;

d.   loss of enjoyment of life;

e.   past and future medical and related expenses; and

f.   loss of consortium and companionship.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

44.   Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

45.   Lilly owed to Plaintiff, and to other consumers and patients, a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply and/or distribution of the drug Cymbalta, including the duty to assure that the product is as effective as it is promoted, that the product carries adequate warnings and that the product does not cause users to suffer from unreasonable, dangerous side effects.

46.   Lilly was negligent in the design, manufacture, testing, advertising, marketing, promoting, labeling, supply, and sale of Cymbalta in that it:

a.   Failed to provide proper warnings regarding the true frequency and severity of the withdrawal and dependency side effects associated with Cymbalta;

b.   Failed to provide warnings that Cymbalta could cause patients to become physically dependent on Cymbalta;

c.   Failed to provide adequate training and instructions to patients and health care professionals regarding appropriate uses and discontinuation of Cymbalta;

d.   Failed to warn that the risks associated with Cymbalta exceeded the risks of other comparable forms of treatment;

e.   Negligently misrepresented the efficacy of Cymbalta by portraying Cymbalta as being

-10-

COMPLAINT

1        more efficacious than it really is;

2        f.      Negligently designed Cymbalta in a way that it knew would cause withdrawal and

3                physical dependency;

4        g.      Negligently marketed Cymbalta despite the fact that the risk of the drug was so high and

5                the benefits of the drug were so questionable that no reasonable pharmaceutical company,

6                exercising due care, would have placed it on the market;

7        h.      Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or

8                concealed, material facts regarding the safety and efficacy of Cymbalta to the Plaintiff,

9                the public, the FDA and the medical community;

10       i.      Failed to comply with its post-manufacturing duty to warn that Cymbalta was being

11               promoted, distributed and prescribed without warning of the true risk of side effects and

12               without accurate information regarding its efficacy; and

13       j.      Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and

14               wanton disregard for Plaintiff's rights and safety.

15       47.     Despite the fact that Lilly knew, or should have known, that Cymbalta caused

16  unreasonable, dangerous side effects, Lilly continued to market Cymbalta to consumers, including

17  Plaintiff, when there were safer and more effective alternative methods and treatments. Lilly knew, or

18  should have known, that Cymbalta users would suffer foreseeable injuries as a result of its failure to

19  exercise ordinary care, as described above. Lilly knew or should have known that the Cymbalta

20  designed, formulated, manufactured, and/or supplied by it was defective in design or formulation in that,

21  when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits

22  associated with the design or formulation.

23       48.     Had Lilly provided an adequate warning regarding the frequency and severity of the

24  withdrawal and dependency risks, Plaintiff's injuries would have been avoided.

25       49.     As a direct and proximate result of one or more of these wrongful acts and omissions of

26  Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to

27  incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock,

28  and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has

-11-

incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

50.     WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SECOND CAUSE OF ACTION

## STRICT PRODUCT LIABILITY – DESIGN DEFECT

51.     Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

52.     At all times relevant, Lilly was engaged in the business of selling Cymbalta in the State of California.

53.     The Cymbalta manufactured, marketed, promoted and sold by Lilly was expected to, and did, reach Plaintiff without substantial change in the condition in which it was sold.

54.     Lilly introduced a product into the stream of commerce that is dangerous and unsafe in that the harm of Cymbalta outweighs and benefit derived therefrom.  The unreasonably dangerous nature of Cymbalta caused serious harm to Plaintiff.

55.     Lilly manufactured, marketed, promoted and sold a product that was merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by Plaintiff.

56.     Lilly placed Cymbalta into the stream of commerce with wanton and reckless disregard for public safety.

57.     Despite evidence that Cymbalta is dangerous and likely to place users at serious risk to their health, Lilly failed to disclose and warn of the health hazards and risks associated with Cymbalta and, in fact, acted to deceived the medical community and public at large, including all potential users of Cymbalta, by promoting it as safe and effective.

58.     Lilly knew or should have known that physicians and other healthcare providers began commonly prescribing Cymbalta as a safe and effective product despite its lack of efficacy and potential

1    for serious side effects.

2          59.     There are other antidepressant medications and similar drugs on the market with safer

3    alternative designs, in that they provide equal or greater efficacy and far less risk.

4          60.     As a direct and proximate result of Lilly's widespread promotional activity, physicians

5    commonly prescribe Cymbalta and safe and effective.

6          61.     As a direct and proximate result of one or more of these wrongful acts and omissions of

7    Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to

8    incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock,

9    and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has

10   incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will

11   continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation

12   of preexisting conditions and activation of latent conditions, and other losses and damages.

13         62.     WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and

14   punitive damages, together with interest, costs of suit, and all such other relief as the Court deems

15   appropriate pursuant to the common law and statutory law.

16                              **THIRD CAUSE OF ACTION**

17                   **STRICT PRODUCT LIABILITY – FAILURE TO WARN**

18         63.     Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this

19   Complaint.

20         64.     Lilly researched, tested, developed, designed, licensed, manufactured, packaged,

21   inspected, labeled, distributed, sold, marketed, promoted and/or introduced Cymbalta into the stream of

22   commerce and in the course of same, directly advertised and/or marketed Cymbalta to consumers or

23   persons responsible for consumers, and therefore, had a duty to warn Plaintiff and Plaintiff's physicians

24   of the risks associated with Cymbalta, which Lilly knew or should have known are inherent in the use of

25   Cymbalta.

26         65.     Lilly had a duty to warn of adverse drug reactions, which it knew or should have known,

27   can be caused by the use of Cymbalta and/or are associated with the use of Cymbalta, including its

28   propensity to induce withdrawal symptoms and side effects.

-13-

COMPLAINT

66.     Cymbalta was under the exclusive control of Lilly and was not accompanied by appropriate warnings regarding all possible adverse side effects and complications associated with the use and discontinuation of Cymbalta.  The information given to consumers and physicians did not accurately reflect the risk, incidence, symptoms, scope or severity of such side effects to the consumer as compared to other similar products available in the market, which possessed lower risk of such side effects.  The promotional activities of Lilly further diluted and/or minimized any warnings that were provided with the product.

67.     Lilly downplayed the serious and dangerous side effects of Cymbalta in order to foster and heighten sales of the product.

68.     Cymbalta was defective and unreasonably dangerous when it left the possession of Lilly in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it, including but not limited to severe, debilitating withdrawal symptoms.  Even though Lilly knew or should have known the risks associated with Cymbalta, it failed to provide adequate warnings.

69.     Plaintiff used Cymbalta as intended or in a reasonably foreseeable manner.

70.     Plaintiff could not have discovered any defect in the drug through the exercise of reasonable care.

71.     Lilly, as manufacturer of Cymbalta and other pharmaceutical prescription drugs, is held to the level of knowledge of an expert in the field, and further, Lilly had knowledge of the dangerous risks and side effects of Cymbalta.

72.     Plaintiff did not have the same knowledge as Lilly and no adequate warning was communicated to her physicians.

73.     Lilly had a continuing duty to warn consumers, including Plaintiff and her physicians, and the medical community of the dangers associated with Cymbalta and by negligently and wantonly failing to adequately warn of the dangers associated with the use of Cymbalta, Lilly breached its duty.

74.     Although Lilly knew or should have known of the defective nature of Cymbalta, it continued to design, manufacture, market and sell the drug without providing adequate warnings or instructions concerning the use of the drug in order to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harms posed

-14-

by the drug.

75.     In addition, Lilly's conduct in the packaging, warning, marketing, advertising, promoting, distribution, and sale of the drug was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers, including Plaintiff.

76.     As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

77.     WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FOURTH CAUSE OF ACTION

## STRICT PRODUCT LIABILITY

78.     Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

79.     Lilly designed, manufactured, marketed, promoted, sold, supplied, and/or distributed Cymbalta in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

80.     Lilly designed, manufactured, marketed, promoted, sold, supplied, and/or distributed Cymbalta, which was expected to and did reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Lilly.

81.     Plaintiff used Cymbalta as prescribed and in a manner normally intended, recommended, promoted, and marketed by Lilly.

82.     Cymbalta failed to perform safely when used by ordinary consumers, including Plaintiff, when used as intended and in a reasonably foreseeable manner.

-15-

83.     Cymbalta was defective in its design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design and formulation.

84.     Cymbalta was defective in design or formulation in that it posed a greater likelihood of injury compared to other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

85.     Cymbalta was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with, nor was otherwise accompanied by, warnings adequate to alert consumers, including Plaintiff and her physicians, of the risks described herein, including the significant increased risk of withdrawal symptoms.

86.     Although Lilly knew or should have known of the defective nature of Cymbalta, it continued to design, manufacture, market, and sell Cymbalta in order to maximize sales and profits at the expense of the public health and safety.  By so acting, Lilly acted with a conscious and deliberate disregard of the foreseeable harm caused by Cymbalta.

87.     Plaintiff could not, through the exercise of reasonable care, have discovered Cymbalta's defects or perceived the dangers posed by the drug.

88.     Lilly's conduct as described herein was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Lilly and deter it from similar conduct in the future.

89.     As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

90.     WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems

COMPLAINT

appropriate pursuant to the common law and statutory law.

## FIFTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

91.              Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

92.    Lilly owed a duty to Plaintiff and her physicians to convey and communicate truthful and accurate information about Cymbalta.

93.    Lilly represented to Plaintiff, her physicians, and other members of the public and the medical community that Cymbalta was safe for use and that any withdrawal side effects were no different, and no worse and no more frequent, than other similar products in the market.  These representations were, in fact, false.

94.    Lilly also represented to Plaintiff, her physicians, and other members of the public and the medical community that Cymbalta can treat physical pain associated with depression.  These representations were, in fact, false.

95.    Lilly was negligent in failing to exercise due care in making the aforesaid representations.

96.    Lilly had a pecuniary interest in making said representations, which were made in order to expand sales and increase revenue Cymbalta.

97.    At the time said representations were made by Lilly, at the time Plaintiff and her physicians took the actions herein alleged, Plaintiff and her physicians were ignorant of the falsity of Lilly's representations and reasonably believed them to be true.  In justifiable reliance upon said representations, Plaintiff and her physicians were induced to, and did, use Cymbalta and attempt to discontinue from Cymbalta.  If Plaintiff and her physicians had known the actual facts, Plaintiff's injuries would have been avoided because Plaintiff's physician would not have prescribed the drug, Plaintiff would not have taken the drug, and/or the risk would have been conveyed to Plaintiff in a way so as to alter the prescription and avoid Plaintiff's injuries.

98.    The reliance of Plaintiff and her physicians upon Lilly's representations was justified because the representations were made by individuals and entities who appeared to be in a position

1 │ to know the true facts relating to risks associated with Cymbalta.

2 │      99.    As a direct and proximate result of one or more of these wrongful acts and omissions of

3 │ Lilly, Plaintiff suffered pecuniary losses including but not limited to past and future medical and related

4 │ expenses.

5 │      100.   WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and

6 │ punitive damages, together with interest, costs of suit, and all such other relief as the Court deems

7 │ appropriate pursuant to the common law and statutory law.

8 │ **SIXTH CAUSE OF ACTION**

9 │ **FRAUD**

10 │     101.   Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this

11 │ Complaint.

12 │     102.   Lilly represented to Plaintiff, her physicians, and other members of the public and the

13 │ medical community that Cymbalta was safe for use and that any withdrawal side effects were no

14 │ different, and no worse and no more frequent, than other similar products in the market.  These

15 │ representations were, in fact, false and material.

16 │     103.   Lilly also represented to Plaintiff, her physicians, and other members of the public

17 │ and the medical community that Cymbalta can treat physical pain associated with depression.  These

18 │ representations were, in fact, false and material.

19 │     104.   Lilly made the aforesaid representations knowingly and/or with reckless disregard for

20 │ their truth or falsity.

21 │     105.   Lilly made the aforesaid representations with the intent that Plaintiff and her

22 │ physicians act upon said representations.

23 │     106.   At the time said representations were made by Lilly, at the time Plaintiff and her

24 │ physicians took the actions herein alleged, Plaintiff and her physicians were ignorant of the falsity

25 │ of Lilly's representations and reasonably believed them to be true.  In justifiable reliance upon said

26 │ representations, Plaintiff and her physicians were induced to, and did, use Cymbalta and attempt to

27 │ discontinue from Cymbalta.  If Plaintiff and her physicians had known the actual facts, Plaintiff's

28 │ injuries would have avoided because either Plaintiff's physician would not have prescribed the

drug, Plaintiff would not have taken the drug, and/or the risk would have been conveyed to Plaintiff in a way so as to alter the prescription and avoid Plaintiff's injuries.

107.    The reliance of Plaintiff and her physicians upon Lilly's representations was justified because the representations were made by individuals and entities who appeared to be in a position to know the true facts relating to risks associated with Cymbalta.

108.    As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

109.    WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

110.    Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

111.    As described herein, Plaintiff suffered injuries as a direct and proximate result of her use and discontinuation of Cymbalta.

112.    At the time of Plaintiff's use of Cymbalta and resulting injuries, the Cymbalta she was taking was in essentially the same condition as when it left the control and possession of Lilly.

113.    At all times relevant, the Cymbalta received and used by Plaintiff was not fit for the ordinary purposes for which it is intended to be used in that, *inter alia*, it posed a higher risk of withdrawal symptoms – of greater duration and severity – than other similar products available in the market.

114.    Plaintiff's injuries were due to the fact that Cymbalta was in a defective condition, as

described herein, rendering it unreasonably dangerous to her.

115.    As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

116.    WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## EIGHTH CAUSE OF ACTION

## UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA *BUSINESS AND PROFESSIONS CODE* SECTION 17200, ET SEQ.

117.    Plaintiffs incorporate all paragraphs of this Complaint as if set forth herein.

118.    California's Unfair Competition Law (UCL) creates a cause of action for those harmed by unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

119.    Defendant has made numerous misrepresentations to Plaintiffs, their healthcare providers, and the general public.

120.    Defendant has made numerous misleading omissions, including their failure to disclose risk information as described herein, thereby giving rise to unnecessary pain and suffering.

121.    Defendant's business practices relating to their products are unlawful because they constitute, *inter alia*, false advertising, intentional misrepresentation and fraudulent concealment.

122.    As a direct and proximate result of Defendant's unlawful business practices and false advertising, Plaintiffs have suffered significant damages, including but not limited to physical injury and actual loss of money or property, and will continue to suffer such damages in the future.

-20-

123.   WHEREFORE, Plaintiffs seek damages, restitution, disgorgement, injunctive relief, attorneys' fees and costs, and all other relief allowed under California Business and Professions Code § 17200, *et seq.*

## NINTH CAUSE OF ACTION

## LOSS OF CONSORTIUM

124.   Plaintiffs incorporate all paragraphs of this Complaint as if set forth herein.

125.   At all times herein mentioned, Plaintiffs were, and are, legally married as husband and wife.

126.   As a direct and proximate result of the aforementioned conduct of the Defendant, and as a result of the injuries and damages to Plaintiff Claudia Herrera, her husband, Plaintiff Peter Lowry, has been deprived of the love, companionship, comfort, affection, society, solace or moral support, protection, loss of enjoyment of sexual relations, and loss of physical assistance in the operation and maintenance of the home, and has thereby sustained, and will continue to sustain damages.

127.   WHEREFORE, Plaintiffs demand judgment against the Defendant and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## PRAYER FOR DAMAGES

WHEREFORE, as so far as the law and this Court allows, Plaintiffs demand judgment against the Defendant as follows:

**AS TO THE FIRST CAUSE OF ACTION FOR NEGLIGENCE:**

1.   General damages according to proof at the time of trial;

2.   Medical and other special damages, past, present and future, according to proof at the time of trial;

3.   Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.   For medical monitoring according to proof;

5.   For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6.   Costs of suit incurred herein; and

COMPLAINT

7.      For such other and further relief as the court may deem just and proper.

**AS TO THE SECOND CAUSE OF ACTION FOR STRICT PRODUCT LIABILITY – DESIGN DEFECT:**

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6.      Costs of suit incurred herein; and

7.      For such other and further relief as the court may deem just and proper.


**AS TO THE THIRD CAUSE OF ACTION FOR STRICT PRODUCT LIABILITY – FAILURE TO WARN:**

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6.      Punitive and exemplary damages;

7.      Costs of suit incurred herein; and

8.      For such other and further relief as the court may deem just and proper.

**AS TO THE FOURTH CAUSE OF ACTION FOR STRICT PRODUCT LIABILITY:**

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the

-22-

1  time of trial;

2       3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

3       4.      For medical monitoring according to proof;

4       5.      For pre-judgment and post-judgment interest as followed by the laws of the state of

5  California;

6       6.      Punitive and exemplary damages;

7       7.      Costs of suit incurred herein; and

8       8.      For such other and further relief as the court may deem just and proper.

9       **AS TO THE FIFTH CAUSE OF ACTION FOR NEGLIGENT**

10 **MISREPRESENTATION:**

11      1.      General damages according to proof at the time of trial;

12      2.      Medical and other special damages, past, present and future, according to proof at the

13 time of trial;

14      3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

15      4.      For medical monitoring according to proof;

16      5.      For pre-judgment and post-judgment interest as followed by the laws of the state of

17 California;

18      6.      Punitive and exemplary damages;

19      7.      Costs of suit incurred herein; and

20      8.      For such other and further relief as the court may deem just and proper.

21      **AS TO THE SIXTH CAUSE OF ACTION FOR FRAUD:**

22      1.      General damages according to proof at the time of trial;

23      2.      Medical and other special damages, past, present and future, according to proof at the

24 time of trial;

25      3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

26      4.      For medical monitoring according to proof;

27      5.      For pre-judgment and post-judgment interest as followed by the laws of the state of

28 California;

-23-

6. Punitive and exemplary damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE SEVENTH CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY:**

1. General damages according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE EIGHTH CAUSE OF ACTION FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE §§ 17200, et seq.:**

1. For injunctive relief, forever enjoining Defendant from the acts of unfair competition and untrue and misleading business practices, and ordering Defendant to pay restitution to Plaintiff all funds acquired by means of any act or practice declared by this Court to be in violation of Business and Professions Code §§ 17200, et seq., unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

2. For disgorgement of Defendant's profits;

3. For exemplary and punitive damages in an amount to be proven at trial;

4. For attorney fees, according to proof;

5. For such other and further relief as the Court deems just and proper.

**AS TO THE NINTH CAUSE OF ACTION FOR LOSS OF CONSORTIUM:**

1. General damages according to proof at the time of trial;

COMPLAINT

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6.      Costs of suit incurred herein; and

7.      For such other and further relief as the court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs CLAUDIA HERRERA and PETER LOWRY demand a jury trial.

DATED:  April 17, 2013                           LOPEZ McHUGH LLP


By: _____
     Ramon Rossi Lopez
     Matthew Ramon Lopez

     Attorneys for Plaintiff, SIDNEY CARTER


**Of Counsel:**

Harris L. Pogust (for *pro hac vice* consideration)
T. Matthew Leckman (for *pro hac vice* consideration)
POGUST BRASLOW & MILLROOD, LLC
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA  19428
hpogust@pbmattorneys.com
mleckman@pbmattorneys.com

COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV13- 2702 GW (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| CLAUDIA HERRERA and PETER LOWRY, | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) Civil Action No. **CV 13-02702**-*6W* |
| v. | ) *(PJW)* |
| ELI LILLY AND COMPANY, a corporation; and | ) |
| DOES 1 through 50, inclusive, | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Ramon R. Lopez
Matthew R. Lopez
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


CLERK OF COURT



Date: APR 1 7 2013 _____    _____
                                                *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| CLAUDIA HERRERA and PETER LOWRY, | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action CV 13-02702-GW |
| | ) (PJWx) |
| ELI LILLY AND COMPANY, a corporation; and | ) |
| DOES 1 through 50, inclusive, | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Ramon R. Lopez
Matthew R. Lopez
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  APR 1 7 2013          _____
                            _Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____          _____

                                                        *Server's signature*


                                         _____

                                                        *Printed name and title*


                                         _____

                                                        *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

CLAUDIA HERRERA and PETER LOWRY

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

ELI LILLY AND COMPANY, a corporation; and DOES 1 through 50, inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Ramon Rossi Lopez, Matthew Ramon Lopez, Lopez McHugh LLP
100 Bayview Circle, Suite 5600, Newport Beach, CA 92660
(949) 737-1501

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332(a)
Personal Injury Product Liability Litigation

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** ☐ 463 Alien Detainee | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 510 Motions to Vacate Sentence | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | | **TORTS** | ☐ 535 Death Penalty | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **TORTS** **PERSONAL INJURY** | **PERSONAL PROPERTY** ☐ 370 Other Fraud | **Other:** ☐ 540 Mandamus/Other | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 690 Other | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☒ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:  CV13-02702

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, CA | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Marion County, IN |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, CA | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Matthew R. Lopez_   DATE: April 17, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |