David E. Stanley (SBN 144025)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080
dstanley@reedsmith.com

Michael X Imbroscio *(pro hac vice)*
Phyllis A. Jones *(pro hac vice)*
Kathleen E. Paley *(pro hac vice)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5868
Facsimile: (202) 778-5868
mimbroscio@cov.com
pajones@cov.com
kpaley@cov.com

Attorneys for Defendant
Eli Lilly and Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA HERRERA & PETER LOWRY,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>    Defendant. | Case No.: 2:13-cv-2702 SVW-MANx<br><br>**ELI LILLY AND COMPANY'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Pre-trial Conference: April 27, 2015<br>Trial: May 5, 2015 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

THE PARTIES' CLAIMS AND DEFENSES ........................................................3

    A.   Ms. Herrera's Claims ...........................................................................3

        1.    Strict Product Liability-Failure to Warn (Claim Three)................3

        2.    Negligence (Claim One) ...................................................8

        3.    Negligent Misrepresentation (Claim Five) ....................................9

        4.    Fraud (Claim Six) ........................................................10

    B.   Lilly's Affirmative Defenses................................................................10

        1.    Affirmative Defense Four: Failure to Mitigate.............................11

        2.    Affirmative Defenses Five and Twenty-One: Comparative
Negligence; Restatement (Third) of Torts: Products Liability
§§ 4, 6 .............................................................................12

        3.    Affirmative Defense Twenty-Three: Fault and Responsibility of
Third-Party Products or Persons or Superseding or Intervening
Causes.............................................................................12

        4.    Affirmative Defenses Fifteen, Sixteen, Eighteen, and
Thirty-Six: Federal Preemption; No Private Cause of Action
under Food, Drug, and Cosmetic Act; Compliance with Applicable
Laws and Regulations; and Buckman Co. v. Pls.' Legal Comm..............13

ANTICIPATED EVIDENTIARY ISSUES ..........................................................14

ISSUES OF LAW ...............................................................................................15

BIFURCATION...................................................................................................15

JURY TRIAL.......................................................................................................16

ATTORNEYS' FEES ..........................................................................................16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

LILLY'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank Saderat Iran v. Telegen Corp.*,
  30 F. App'x 741 (9th Cir. 2002)...............................................................15

*Brown v. Super. Ct. of City & Cnty. of San Francisco*,
  44 Cal. 3d 1049 (1988) .............................................................................3

*Buckman Co. v. Pls.' Legal Comm.*,
  531 U.S. 341 (2001).................................................................................13

*Carlin v. Super. Ct. of Sutter Cnty.*,
  13 Cal. 4th 1104 (1996) .............................................................................9

*Carnes v. Eli Lilly & Co.*,
  2013 U.S. Dist. LEXIS 176201 (D.S.C. Dec. 16, 2013) ...........................2

*Heston v. Taser Int'l, Inc.*,
  431 F. App'x 586 (9th Cir. 2011) .............................................................15

*Huntman v. Danek Med., Inc.*,
  1998 U.S. Dist. LEXIS 13431 (S.D. Cal. July 24, 1998)..........................10

*Latiolais v. Merck & Co.*,
  2007 U.S. Dist. LEXIS 101857 (C.D. Cal. Feb. 6, 2007), *aff'd*, 302 F.
  App'x 756 (2008) ........................................................................................9

*McDowell v. Eli Lilly & Co.*,
  --- F. Supp. 3d ---, 2014 U.S. Dist. LEXIS 157819 (S.D.N.Y. Nov. 6,
  2014), *reconsideration denied*, No. 13 Civ. 3786, 2015 U.S. Dist.
  LEXIS 23445 (S.D.N.Y. Feb. 25, 2015) .................................................1, 2

*Motus v. Pfizer Inc.* (*Motus I*),
  196 F. Supp. 2d 984 (C.D. Cal. 2001), *aff'd*, 358 F.3d 659 (9th Cir.
  2004) ....................................................................................................2, 3, 9

**Statutes**

Cal. Civ. Code § 3288..................................................................................16

Cal. Civ. Code §§ 3287-91 ..........................................................................16

**Other Authorities**

Cal. Forms of Jury Instruction § 405 .....................................................12, 16

Cal. Forms of Jury Instruction § 432 ...........................................................13

Cal. Forms of Jury Instruction § 1205 ...........................................................4

Cal. Forms of Jury Instruction § 1221 .........................................................12

Cal. Forms of Jury Instruction § 3900 .........................................................16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

Cal. Forms of Jury Instruction § 3930 ........................................................ 11

2

Complaint ....................................................................................................... 9

3

Hon. Stephen V. Wilson's Procedures and Schedules ............................ 3, 11

4

Local Rule 16-4 ............................................................................................ 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Pursuant to Local Rule 16-4, Defendant Eli Lilly and Company ("Lilly")
2   respectfully submits this Memorandum of Contentions of Fact and Law in connection
3   with the trial scheduled to commence in this matter on May 5, 2015.

4   **PRELIMINARY STATEMENT**

5   Since the medicine's launch, the FDA-approved Physician's Package Insert for
6   Cymbalta (or duloxetine), a selective serotonin norepinephrine inhibitor prescribed for
7   mood and pain disorders, has included a detailed, three-paragraph warning on the risk
8   of symptoms upon cessation of therapy.  The risk of antidepressant discontinuation
9   symptoms is a well-understood clinical phenomenon reflected in the peer-reviewed
10  literature and prevailing practice guidelines, and the contents of the Cymbalta
11  discontinuation warning echoes this longstanding recognition of the potential for this
12  event.   Despite the explicit direction in the Cymbalta label on the risk of
13  discontinuation symptoms, Plaintiff Claudia Herrera alleges that Lilly failed to warn
14  of the potential for discontinuation-related adverse events upon completion of
15  Cymbalta therapy.  As a result, Ms. Herrera alleges, she suffered a collection of
16  adverse symptoms when she discontinued her Cymbalta treatment.  These claims fail
17  on two independent grounds.

18  First, Cymbalta's discontinuation warning is adequate as a matter of law, a
19  question resolved by another federal court in related Cymbalta discontinuation
20  litigation.  *See McDowell v. Eli Lilly & Co.*, --- F. Supp. 3d ---, 2014 U.S. Dist. LEXIS
21  157819 (S.D.N.Y. Nov. 6, 2014), *reconsideration denied*, No. 13 Civ 3786, 2015
22  U.S. Dist. LEXIS 23445 (S.D.N.Y. Feb. 25, 2015).   That court held that "the
23  Cymbalta warning is adequate . . . because it is accurate, clear, consistent on its face[,]
24  and portrays with sufficient intensity the risk involved in taking the drug."  *Id.* at *36
25  (internal quotation marks and citations omitted).[1]  Second, Ms. Herrera cannot satisfy

---

[1] In reaching its decision, the court found it significant that: (a) the discontinuation
warning had appeared in multiple sections of the U.S. package insert since Cymbalta's
initial 2004 approval, (b) the warning "includes a detailed catalog of symptoms
possible upon discontinuation[, including] . . . the symptoms the Plaintiff alleges that
he experienced," (c) "the method of communicating information on individual

her burden of proving that any alleged inadequacy in the Cymbalta discontinuation warning was the proximate cause of her alleged injuries, an evidentiary showing required under California law. *Motus v. Pfizer Inc.* (*Motus I*), 196 F. Supp. 2d 984, 990 (C.D. Cal. 2001), *aff'd*, 358 F.3d 659 (9th Cir. 2004). As set out in Lilly's pending summary judgment motion in this suit (Dkt. # 120), Ms. Herrera's prescribing physician, Dr. Mark Braunstein, had preexisting, independent awareness of the risk of antidepressant discontinuation syndrome. In addition, Dr. Braunstein expressly testified that a different warning would not have changed his decision to prescribe Cymbalta to Ms. Herrera.

This indisputable record evidence is fatal to Ms. Herrera's proximate cause claim. *Motus I*, 196 F. Supp. 2d at 990. In related litigation, two other courts have granted summary judgment on the same ground: that plaintiffs could not satisfy their proximate cause burden in the face of their prescribing provider's (1) testimony on their independent knowledge of the risk of discontinuation symptoms and (2) admission that a different warning would not have changed their decision to prescribe Cymbalta. *See McDowell*, 2014 U.S. Dist. LEXIS 157819 ("[Plaintiff's health care provider] testified that she had knowledge of the risks of abrupt discontinuation independent of the information provided by Eli Lilly [& Co.] and that she was not misled by the discontinua[tion] warning[]. Thus, . . . the Defendant did not proximately cause the Plaintiff's injuries and is relieved of liability."); *Carnes v. Eli Lilly & Co.*, 2013 U.S. Dist. LEXIS 176201 (D.S.C. Dec. 16, 2013). Ms. Herrera, likewise, cannot succeed on her claims.

---

[discontinuation] symptoms appearing in clinical trials [in the Cymbalta label] is consistent with the accepted practice of identifying such individual adverse events observed at or above a specified threshold and in accord with FDA regulations and guidance," (d) the warning "identifies symptoms that, by their nature, have the capacity to be severe and that are not, by definition self-limiting," and (e) the warning "devotes a paragraph to advising prescribers of the appropriate means of taking a patient off the medicine." *McDowell*, 2014 U.S. Dist. LEXIS 157819, at *28-33.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# THE PARTIES' CLAIMS AND DEFENSES

## A. Ms. Herrera's Claims

Ms. Herrera raises four common law claims in this suit: strict liability failure to warn, negligence, negligent misrepresentation, and fraud. Each claim rests on the theory that Lilly failed to provide adequate warnings on the risk of adverse events upon discontinuation of Cymbalta treatment. As set out more fully in Lilly's pending summary judgment motion, which Lilly fully incorporates herein, if Ms. Herrera fails to succeed on that foundation failure-to-warn claim, her remaining claims necessarily fail. *See* Lilly's Mem. of Points & Auths. in Supp. of its Mot. for Summ. J., Dkt. #120 (Feb. 5, 2015), at 15-16 (collecting cases). However, consistent with the guidance of the local rules, Lilly addresses each of Ms. Herrera's claims below.

Each of Ms. Herrera's four claims is based on California law and, as suggested by the Court's Procedures, Lilly construes the California Forms of Jury Instructions to apply generally to these claims. *See* Hon. Stephen V. Wilson's Procedures and Schedules #13c. Because the parties' jury instructions are not yet due to the Court, Lilly reserves its right to modify or supplement the elements set forth below to address the specific facts of this action.

### 1.   Strict Product Liability-Failure to Warn (Claim Three)

Under the learned intermediary doctrine, as applied in California, a manufacturer of prescription drug products has a duty to warn only the prescribing physician — not the patient. *Motus I*, 196 F. Supp. 2d at 990. Furthermore, a pharmaceutical manufacturer "is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Brown v. Super. Ct. of City & Cnty. of San Francisco*, 44 Cal. 3d 1049, 1069 (1988). Thus, to prevail on her claim of strict liability failure to warn, Ms. Herrera must establish that:

1.   Lilly manufactured, distributed, or sold Cymbalta;

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

2. Cymbalta had potential risks, side effects, or allergic reactions that were known or knowable in light of the scientific or medical knowledge that was generally accepted in the scientific or medical community at the time of the manufacture, distribution, or sale;

3. The potential risks, side effects, or allergic reactions presented a substantial danger when Cymbalta is used or misused in an intended or reasonably foreseeable way;

4. Ms. Herrera's physician would not have recognized the potential risks, side effects, or allergic reactions;

5. Lilly had a continuing duty to warn physicians of the potential risks, side effects, or allergic reactions that may follow the foreseeable use of Cymbalta as long as Cymbalta was in use;

6. Lilly failed to adequately warn or instruct Ms. Herrera's physician of the potential risks, side effects, or allergic reactions;

7. Ms. Herrera was harmed; and

8. The lack of sufficient instructions or warnings was a substantial factor in causing Ms. Herrera's harm, *i.e.*, that an adequate warning to Ms. Herrera's prescribing physician would have altered his decision to prescribe Cymbalta, and Ms. Herrera's injury would have been avoided.

*See* Cal. Forms of Jury Instruction § 1205.

The following key evidence and expert testimony establishes that Ms. Herrera cannot satisfy her burden on this claim:

### a) The Cymbalta Discontinuation Warning Is Adequate.

1. Cymbalta was first approved by the FDA in 2004 and has contained warnings of the symptoms possible upon discontinuation of the product since that time.

2. In 2005, an article entitled "Symptoms following abrupt discontinuation of duloxetine treatment in patients with major depressive disorder" was published in the Journal of Affective Disorders ("2005 JAD Article"). Three of the named authors, David G. Perahia, Daniel Kajdasz, and Durisala Desaiah, were employees of Eli Lilly and Company at the time of the publication of the 2005 JAD Article.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3.  The 2005 JAD Article reported data arising from nine clinical trials assessing the efficacy and safety of Cymbalta in the treatment of major depressive disorder.  All of the studies in the article "were funded, designed and conducted by Eli Lilly and Company."

4.  The 2005 JAD Article noted that discontinuation symptoms are "common following antidepressant treatment."   The 2005 JAD Article further reported that in the short-term placebo-controlled study "[s]ignificantly more duloxetine-treated patients (44.3%) reported at least 1 D[iscontinuation] E[mergent] A[dverse] E[vent] than placebo-treated patients (22.9%), with dizziness being the most common symptom."

5.  The 2005 JAD Article reported that "[o]f the 510 events reported, 203 (39.8%) were mild, 258 (50.6%) were moderate and 49 (9.6%) were severe."

6.  The 2005 JAD Article reported that in the long-term placebo-controlled study "[s]ignificantly more duloxetine-treated patients reported at least 1 D[iscontinuation] E[mergent] A[dverse] E[vent] (9.1%) than did placebo-treated patients (2.0%) with dizziness being the most common symptom."

7.  The 2005 JAD Article reported that "[o]f the 34 DEAEs reported, 24 (70.6%) were mild, 9 (26.5%) were moderate, and 1 (2.9%) was severe."

8.  The 2005 JAD Article reported that in the uncontrolled 52-week open-label study, "half of the patients reported at least 1 D[iscontinuation] E[mergent] A[dverse] E[vent]  with dizziness being the most common symptom."

9.  The 2005 JAD Article reported that "[a]mong the 281 patients reporting at least 1 D[iscontinuation] E[mergent] A[dverse] E[vent], there were a total of 793 D[iscontinuation] E[mergent] A[dverse] E[vent]s reported of which 290 (36.6%) were reported as being of mild severity, 367 (46.3%) moderate, and 136 (17.2%) severe."

10.  Prior to Ms. Herrera's initial prescription of Cymbalta in 2007, the FDA re-examined Cymbalta's label in connection with the approval of two

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   additional indications for use of the medicine and other revisions to portions of the

2   label.

3          11.  At the time of Ms. Herrera's original Cymbalta prescription, the

4   FDA-approved label included a detailed discussion about the risk of discontinuation

5   symptoms in three distinct sections.

6          a.      The Warnings section stated:

7   **Clinical Worsening and Suicide Risk** — . . . If the decision has
8   been made to discontinue treatment, medication should be
    tapered, as rapidly as is feasible, but with recognition that abrupt
9   discontinuation can be associated with certain symptoms (*see*
    PRECAUTIONS *and* DOSAGE AND ADMINISTRATION,
10  Discontinuing Cymbalta, for a description of the risks of
    discontinuation of Cymbalta).

11         b.      The Precautions section stated:

12  <u>Discontinuation of Treatment With Cymbalta</u> — Discontinuation
    symptoms have been systematically evaluated in patients taking
13  Cymbalta. Following abrupt discontinuation in placebo-controlled
    clinical trials of up to 10-weeks duration, the following symptoms
14  occurred at a rate greater than or equal to 2% and at a significantly
    higher rate in either the MDD or GAD Cymbalta-treated patients
15  compared to those discontinuing from placebo: dizziness; nausea;
    headache; paresthesia; vomiting; irritability; and nightmare.
16
    During marketing of other SSRIs and SNRIs (serotonin and
17  norepinephrine reuptake inhibitors), there have been spontaneous
    reports of adverse events occurring upon discontinuation of these
18  drugs, particularly when abrupt, including the following:
    dysphoric mood, irritability, agitation, dizziness, sensory
19  disturbances (e.g., paresthesias such as electric shock sensations),
    anxiety, confusion, headache, lethargy, emotional lability,
20  insomnia, hypomania, tinnitus, and seizures. Although these
    events are generally self-limiting, some have been reported to be
21  severe.

22  Patients should be monitored for these symptoms when
    discontinuing treatment with Cymbalta. A gradual reduction in the
23  dose rather than abrupt cessation is recommended whenever
    possible. If intolerable symptoms occur following a decrease in
24  the dose or upon discontinuation of treatment, then resuming the
    previously prescribed dose may be considered. Subsequently, the
25  physician may continue decreasing the dose but at a more gradual
    rate (*see* DOSAGE AND ADMINISTRATION).

26

27

28

c.      The Dosage and Administration section stated:

**Discontinuing Cymbalta**
Symptoms associated with discontinuation of Cymbalta and other SSRIs and SNRIs have been reported (see PRECAUTIONS). Patients should be monitored for these symptoms when discontinuing treatment. A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate.

12.  The label, thus, included a clear statement about the occurrence of discontinuation symptoms in the Cymbalta clinical trial experience, including the important fact that the rate was significantly higher in Cymbalta patients than patients on placebo; a recitation of the specific symptoms possible upon Cymbalta discontinuation (including some of the very symptoms alleged by Ms. Herrera); a warning that "some [symptoms] have been reported to be severe"; instruction that "[p]atients should be monitored" for every discontinuation symptom identified in the label; and guidance on the appropriate protocol for safe discontinuation of the medicine, which may include resuming previously prescribed doses, particularly if, over time, "intolerable symptoms occur."

**b)      Ms. Herrera's Physicians Understood the Risk of Cymbalta Discontinuation Symptoms.**

1. At the time of Ms. Herrera's initial prescription, Dr. Braunstein, Ms. Herrera's initial prescriber, had extensive experience prescribing antidepressants. Based on his training and clinical experience, he knew about the risk of antidepressant discontinuation symptoms, which were present in "some combination . . . with virtually every anti-depressant" he had prescribed.

2. Dr. Braunstein also had first-hand experience with Cymbalta use and discontinuation before he treated Ms. Herrera, and he understood that Cymbalta's label "means exactly what it says, that [discontinuation symptoms] could be equal to [a] 1 percent rate or much higher."

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3.  To reduce the chance of discontinuation symptoms with antidepressant medication, Dr. Braunstein made it a practice to taper down each patient's antidepressant dose.

4.  Dr. Patel, Ms. Herrera's subsequent physician, also understood, at the time Mrs. Herrera began to taper off Cymbalta, that, as a general matter of medical practice, patients should be tapered off antidepressants rather than stopped abruptly.

### c)  Ms. Herrera's Physicians Would Not Have Made A Different Prescribing Decision Had The Cymbalta Discontinuation Warning Been Different.

1.  Dr. Braunstein testified that a different discontinuation warning in the Cymbalta label would not have altered his decision to prescribe Cymbalta to Ms. Herrera.

2.  Dr. Patel, under whose care Ms. Herrera discontinued Cymbalta, testified that a different discontinuation warning in the Cymbalta label would not have changed his treatment of Ms. Herrera.

### d)  Cymbalta Discontinuation Was Not The Cause of Many of Ms. Herrera's Alleged Symptoms.

1.  Ms. Herrera claims that, "[u]pon attempting to discontinue Cymbalta," she experienced paresthesia ("brain zaps"), extreme anxiety and fear, stomach pains, suicidal ideation, uncontrollable muscle spasms, felt as if objects were crawling inside her skin, hot flashes, and body shivers. However, many of these symptoms are consistent with anxiety, depression, hypothyroidism, and perimenopause (all of which were diseases Ms. Herrera had prior to her Cymbalta use) or those symptoms she reported prior to discontinuing the medicine, including anxiety, memory loss, insomnia, hot flashes, decreased exercise capacity, and decreased sexual function.

### 2.  Negligence (Claim One)

In a failure-to-warn suit, "[n]egligence law . . . requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

which fell below the acceptable standard of care, *i.e.*, what a reasonably prudent manufacturer would have known and warned about." *Carlin v. Super. Ct. of Sutter Cnty.*, 13 Cal. 4th 1104, 1112 (1996).

To the extent that Ms. Herrera purports to advance the theory that Lilly was negligent in the "design, formulation, manufacture, sale, promotion, supply and/or distribution" of Cymbalta, Compl. ¶ 45, or negligently failed to warn of Cymbalta's discontinuation risks, those theories fail.  Under California law, these theories of liability would be "subsumed by the manufacturer's duty to warn," and none of the claims "change the premise of Plaintiff's claims, which is that [defendant's] failure to warn of any product defects" ultimately led to her injuries. *See Latiolais v. Merck & Co.*, 2007 U.S. Dist. LEXIS 101857, at *9-11 n.1 (C.D. Cal. Feb. 6, 2007) (rejecting separate claim for negligent failure to test), *aff'd*, 302 F. App'x 756 (2008).  Lilly thus incorporates here its key evidence in opposition to Ms. Herrera's claim for strict liability failure to warn.  Even if a standalone negligence claim were permitted to proceed here, the evidence outlined in opposition to Ms. Herrera's strict liability failure to warn claim confirms that Ms. Herrera cannot satisfy her burden of demonstrating that Lilly failed to warn of a particular risk and did so in a way that fell below the acceptable standard of care.

### 3.   <u>Negligent Misrepresentation (Claim Five)</u>

To the extent that Ms. Herrera purports to advance an independent negligent misrepresentation claim, that claim is subsumed by Ms. Herrera's strict liability failure to warn claim, and Lilly hereby incorporates by reference the key evidence on that claim.  *See Motus I*, 196 F. Supp. 2d at 999 (granting summary judgment on negligence, strict liability, fraud, and warranty claims).

Even if a standalone negligent misrepresentation claim were permitted to proceed here, the following key evidence establishes that Ms. Herrera cannot satisfy her burden on this claim:

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1        1. There is no record evidence that Lilly made any affirmative

2   statement without a reasonable ground to believe that it was true in any of the labeling

3   materials for Cymbalta.

4        2. Even if Ms. Herrera could point to an affirmative statement by

5   Lilly, there is no evidence that Ms. Herrera actually reviewed the Cymbalta

6   discontinuation warning.

7        3. There is no evidence that Ms. Herrera or her prescribing physicians

8   relied on any alleged misrepresentations by Lilly.

9        **4.    Fraud (Claim Six)**

10       To the extent that Ms. Herrera purports to advance a standalone fraud claim,

11  that claim is subsumed by Ms. Herrera's strict liability failure to warn claim, and Lilly

12  hereby incorporates by reference the key evidence on that claim.  *See Huntman v.*

13  *Danek Med., Inc.*, 1998 U.S. Dist. LEXIS 13431, at *15-19 (S.D. Cal. July 24, 1998)

14  (summary judgment on failure to warn, fraud, and warranty claims).

15       Even if a standalone fraud claim were permitted to proceed here, Lilly hereby

16  incorporates its discussion of key evidence in opposition to Ms. Herrera's claim of

17  negligent misrepresentation, *supra* Part A3.

18  **B. Lilly's Affirmative Defenses**

19       Lilly lists its affirmative defenses below.[2]  By so doing, Lilly does not waive its

20  denial of the elements of Ms. Herrera's claims, which were also styled as affirmative

21  defenses in Lilly's answer.[3]

22  _____

[2]  Affirmative Defenses 4 & 27: Ms. Herrera failed to mitigate her damages;
23  Affirmative Defenses 5 & 21: Ms. Herrera was comparatively negligent; Affirmative
    Defense 23: Ms. Herrera was at fault or her actions constituted a
24  superseding/intervening cause; Affirmative Defenses 15, 16, 18, 36: Ms. Herrera's
    claims are preempted.
25  [3] Failure to state a claim upon which relief may be granted (styled as Affirmative
    Defense One); Learned Intermediary Doctrine (styled as Affirmative Defense Two);
26  No proximate cause (styled as Affirmative Defenses Three and Six); Reimbursement
    (styled as Affirmative Defense Eight); No defect (styled as Affirmative Defense Ten);
27  Person of normal constitution would have coped adequately (styled as Affirmative
    Defense Twelve); Lilly met or exceeded the standard of care (styled as Affirmative
    Defense Thirteen); Lilly acted reasonably and in good faith (styled as Affirmative
28  Defense Fourteen); Cymbalta's benefits outweigh its risks (styled as Affirmative

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

As suggested by the Court's Procedures, Lilly construes the California Forms of Jury Instructions to apply generally to its affirmative defenses.  *See* Hon. Stephen V. Wilson's Procedures and Schedules #13c.  Because the parties' jury instructions are not yet due to the Court, Lilly reserves its right to modify or supplement the elements set forth below to address the specific facts of this action.

### 1.   Affirmative Defense Four: Failure to Mitigate

To establish the affirmative defense of failure to mitigate, Lilly must show that Ms. Herrera could have avoided harm with reasonable efforts or expenditures where those efforts or expenditures were reasonable in light of the circumstances facing her at the time, including her ability to make the efforts or expenditures without undue risk or hardship.  *See* Cal. Forms of Jury Instruction § 3930.

Lilly submits that the following evidence supports this affirmative defense.

1.  Although Ms. Herrera received an individualized taper schedule from her physician, Dr. Patel, with whom she was supposed to check in after three weeks before proceeding to reduce her dosage further, she scheduled an appointment for over four weeks later and then proceeded to cancel it and reduce her dosage on her own.  She did not report back to Dr. Patel until two weeks after complete cessation of her Cymbalta use — approximately six weeks after her initial tapering appointment and approximately a week-and-a-half after first experiencing an alleged discontinuation symptom.

Defense Seventeen); Restatement (Second) of Torts § 388, Comment N (styled as Affirmative Defense Twenty); Restatement (Second) of Torts § 402a, Comments J, K (styled as portion of Affirmative Defense Twenty-One); Arguments related to award of damages — First Amendment (styled as Affirmative Defense Twenty-Two), Other medical condition or circumstances beyond Lilly's control (styled as Affirmative Defense Twenty-Six), No requisite level of conduct to support award of punitive damages (styled as Affirmative Defense Twenty-Eight); Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments (styled as Affirmative Defense Twenty-Nine), *BMW of N. Am. v. Gore, Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,* and *State Farm Mut. Auto. Ins. Co. v. Campbell* (styled as Affirmative Defense Thirty); No reasonable reliance (styled as Affirmative Defense Twenty-Four); Product was consistent with or exceeded consumer expectations (styled as Affirmative Defense Twenty-Five); Lack of notice (styled as portion of Affirmative Defense Twenty-Seven); Failure to allege fraud with particularity (styled as Affirmative Defense Thirty-Two); Appropriate description in prescribing materials (styled as Affirmative Defense Thirty-Four).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2. Dr. Patel understood that discontinuation of antidepressant medication can result in unpleasant symptoms such that patients should taper off their medication and not do so without physician supervision.

3. If Ms. Herrera had scheduled and attended her three-week appointment or, at the very least, followed up with Dr. Patel, he could have altered her tapering regimen such that her symptoms could have been assuaged or ameliorated.

### 2. Affirmative Defenses Five and Twenty-One: Comparative Negligence; Restatement (Third) of Torts: Products Liability §§ 4, 6

To establish the affirmative defense of comparative negligence, Lilly must show that:

1. Ms. Herrera was negligent; and

2. Ms. Herrera's negligence was a substantial factor in causing her harm.

*See* Cal. Forms of Jury Instruction §§ 405, 1221.

In support of this affirmative defense, Lilly incorporates by reference its key evidence in support of its affirmative defense of failure to mitigate, *supra* Part B1.

### 3. Affirmative Defense Twenty-Three: Fault and Responsibility of Third-Party Products or Persons or Superseding or Intervening Causes

To establish the affirmative defense of superseding cause, Lilly must show that:

1. Ms. Herrera's conduct occurred after the conduct of Lilly;

2. A reasonable person would consider Ms. Herrera's conduct as a highly unusual or an extraordinary response to the situation;

3. Lilly did not know and had no reason to expect that Ms. Herrera would act in a negligent or wrongful manner; and

4. The kind of harm resulting from Ms. Herrera's conduct was different from the kind of harm that could have been reasonably expected from Lilly's conduct.

*See* Cal. Forms of Jury Instruction § 432.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Lilly submits that the key evidence in support of Lilly's affirmative defense of failure to mitigate, *supra* Part B1 also establishes this affirmative defense.

4.   **Affirmative Defenses Fifteen, Sixteen, Eighteen, and Thirty-Six: Federal Preemption; No Private Cause of Action under Food, Drug, and Cosmetic Act; Compliance with Applicable Laws and Regulations; and *Buckman Co. v. Pls.' Legal Comm.***

To the extent that any of Ms. Herrera's claims are based on alleged misrepresentations to the Food and Drug Administration, those claims are preempted. *See Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341 (2001).

**B.   Abandoned Claims or Defenses**

Ms. Herrera's counsel has informed Lilly that she no longer plans to pursue:

- Her claim for strict liability design defect (Claim Two);

- Her claim for strict product liability (Claim Four);

- Her claim for breach of implied warranty (Claim Seven);

- Her claim for violation of California's unfair competition law (Claim Eight);

- Her claim for loss of consortium (Claim Nine); and

- Her request for damages, except for Ms. Herrera's out-of-pocket medical expenses and for Ms. Herrera's pain and suffering.

Lilly will no longer pursue the following affirmative defenses:

- Subsequent misuse, abuse, modification, alteration, or other change in product (styled as Affirmative Defense Seven)

- Conformity with existing state of the art (styled as Affirmative Defense Nine);

- Waiver and Estoppel (styled as Affirmative Defense Eleven);

- Act of God (styled as Affirmative Defense Nineteen);

- Defenses to breach of warranty claims (styled as Affirmative Defense Twenty-Seven);

- Economic Loss Doctrine (styled as Affirmative Defense Thirty-One).

- Contribution (styled as Affirmative Defense Thirty-Three);

- Defenses and/or limitations under California's Unfair Competition Law and other relevant state consumer protection statutes (styled as Affirmative Defense Thirty-Five); and

LILLY'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- Assumption of Risk/informed consent (styled as Affirmative Defenses Thirty-Seven and Thirty-Eight).

## **ANTICIPATED EVIDENTIARY ISSUES**

Lilly has filed the following motions in limine, which are currently pending:

- To exclude evidence and argument relating to Prozac;

- To exclude evidence and argument relating to foreign labeling;

- To exclude evidence and argument relating to issues unrelated to Plaintiff's alleged Cymbalta discontinuation symptoms;

- To exclude evidence and argument relating to labeling and marketing issues outside the scope of the case;

- To exclude evidence and argument relating to the Quarterwatch publication; and

- To exclude evidence and argument on Lilly's alleged bad company conduct.

Lilly has also filed two *Daubert* motions, which are currently pending, to exclude the testimony of Ms. Herrera's proposed general causation expert, Dr. Joseph Glenmullen, and Ms. Herrera's proposed labeling expert, Dr. Louis A. Morris.

Ms. Herrera has filed the following motions in limine, which are currently pending:

- To admit the European Cymbalta label and other foreign Cymbalta labels which include a specific incidence rate (i.e., 44-45%);

- To admit incidence rates of other Cymbalta risks, as reflected in Lilly's Cymbalta product label;

- To exclude inadmissible character evidence, including any evidence that Plaintiffs tend to take risks or ignore warnings or are litigious;

- To exclude any argument that the instant lawsuits are simply "lawyer-driven" litigation, including any reference to lawyer advertising; and

- To exclude argument and evidence concerning personal experiences with Cymbalta, depression, or fibromyalgia by Lilly counsel and Lilly witnesses.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    The parties have exchanged objections to certain deposition testimony and will

2    shortly exchange objections to certain exhibits.  The parties will attempt to resolve

3    these issues prior to the pretrial conference on April 27.  If the objections cannot be

4    resolved between the parties, the parties will present the objections to the Court.

5    Finally, Lilly reserves its right to raise additional evidentiary issues as may be

6    necessary to defend itself during the trial.

7                                        **ISSUES OF LAW**

8    Lilly hereby incorporates the preceding legal contentions, as well as those

9    arguments outlined in its pending summary judgment motion and pretrial evidentiary

10   motions.

11                                        **BIFURCATION**

12   As set forth in its pending summary judgment motion (Dkt. # 120), Lilly

13   contends that Ms. Herrera is not entitled to punitive damages because the Cymbalta

14   label adequately warns of the risk of discontinuation events upon treatment

15   discontinuation.  In addition, any alleged inadequacy in the warning is insufficient

16   standing alone to warrant punitive damages under the high standard set by California

17   law.[4]

18   In the event the Court permits Ms. Herrera to proceed on her punitive damages

19   claim, Lilly requests, pursuant to L.R. 16-4.3, that the Court bifurcate the trial of this

20   matter with (1) liability for and amount of compensatory damages tried first and (2)

21   liability for and amount of punitive damages, if any, under Indiana law,[5] tried only

22   after a threshold finding of liability for any compensatory damages.  Reverse

23   bifurcation such as this promotes judicial economy, avoids jury confusion, and

24   reduces the risk of unfair prejudice.

25

26   [4] *See Heston v. Taser Int'l, Inc.*, 431 F. App'x 586, 589 (9th Cir. 2011) (upholding
     decision to vacate punitive damages award where manufacturer made efforts, albeit

27   insufficiently, to warn its customers about the risks that resulted in plaintiff's injury).
     [5] *See Bank Saderat Iran v. Telegen Corp.*, 30 F. App'x 741, 743-44 (9th Cir. 2002)

28   (holding, under California choice of law rules, that punitive damages award was
     governed by defendant's state of residence).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## JURY TRIAL

A timely demand for jury trial has been made.  The following issues are triable to the jury:

- Liability for Ms. Herrera's claims;
- Establishment of Lilly's affirmative defenses 4-5, 21, 23, 27; and
- Ms. Herrera's request for damages related to her out-of-pocket medical expenses and for her pain and suffering.[6]

The following issues are triable to the Court:

- Whether Ms. Herrera's claims are preempted;
- The reduction of damages for Ms. Herrera's comparative negligence;[7] and
- Whether Ms. Herrera is entitled to pre-judgment and post-judgment interest under California law.[8]

The following issue is not triable:

- Liability for punitive or exemplary damages, because Lilly provided a warning of Cymbalta's discontinuation symptoms.[9]

## ATTORNEYS' FEES

Neither party requests attorneys' fees.[10]

---

[6] *See* Cal. Forms of Jury Instruction § 3900; Cal. Civ. Code § 3288.
[7] *See* Cal. Forms of Jury Instruction § 405.
[8] *See* Cal. Civ. Code §§ 3287-91.
[9] *See supra* note 4.  To the extent the Court holds that it may award punitive or exemplary damages to Ms. Herrera, the issue of whether any amount of punitive damages is limited by the U.S. Constitution or otherwise is an issue triable only to the Court, as it is an issue of law.
[10] Although Ms. Herrera requested attorneys' fees in her complaint, she did so only pursuant to the Cal. Bus. & Prof. Code § 17200 *et seq.*, which claim she has informed Lilly she will not pursue.

LILLY'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DATED: April 6, 2015                    Respectfully Submitted,


                                        /s/ David E. Stanley
                                        David E. Stanley
                                        REED SMITH LLP

                                        Michael X Imbroscio (*pro hac vice*)
                                        Phyllis A. Jones (*pro hac vice*)
                                        Kathleen E. Paley (*pro hac vice*)
                                        COVINGTON & BURLING LLP

                                        Attorneys for Defendant

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

LILLY'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW