# EXHIBIT 2

```
 1              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
 2
 3
     ERIN HEXUM and NICK HEXUM,        )
 4                                     )
              Plaintiffs,              )
 5                                     )
                  -vs-                 ) CIVIL ACTION NO.
 6                                     ) CV 13-2701-SVW-MAN
     ELI LILLY & COMPANY, an Indiana   )
 7   Corporation,                      )
                                       )
 8            Defendant.               )
                                       )
 9                                     )
     CLAUDIA HERRERA and PETER         )
10   LOWRY,                            )
                                       )
11            Plaintiffs,              )
                                       )
12                -vs-                 ) CIVIL ACTION NO.
                                       ) CV 13-2702-SVW-MAN
13   ELI LILLY & COMPANY, an Indiana   )
     Corporation,                      )
14                                     )
              Defendant.               )
15
16
         VIDEOTAPED DEPOSITION OF SHARON L. HOOG, M.D.
17
                         CONFIDENTIAL
18
19
          The videotaped deposition upon oral
20   examination of SHARON L. HOOG, M.D., a witness
     produced and sworn before me, Janine A. Ferren,
21   RPR, CRR, CSR No. 93-R-1028, Notary Public in and
     for the County of Hamilton, State of Indiana, taken
22   on behalf of the Plaintiffs, at the offices of
     Connor Reporting, 1650 One American Square,
23   Indianapolis, Marion County, Indiana, on the
     10th day of December, 2014, at 10:00 a.m., pursuant
24   to the Federal Rules of Civil Procedure with
     written notice as to time and place thereof.
25
```

| | | |
|---|---|---|
| 1 | A | Lilly has a complex, actually a couple of them, |
| 2 | | and a corporate center. Yes, there are multiple |
| 3 | | buildings there, and we colloquially refer to it |
| 4 | | as a campus. |
| 5 | Q | How many buildings? |
| 6 | A | I'm not aware of the total number, but I can |
| 7 | | count at least 30 or 40. |
| 8 | Q | And would you agree with me that Lilly, over the |
| 9 | | course of the years, has generated billions in |
| 10 | | dollars of revenue from the sale of Cymbalta |
| 11 | | domestically and abroad? |
| 12 | | MS. JONES: Objection, lacks foundation. |
| 13 | | You can answer, if you know. |
| 14 | A | I am aware that some number in the billions is |
| 15 | | floated, but I honestly don't follow the |
| 16 | | revenues. It's not something I'm in any way an |
| 17 | | expert in. |
| 18 | Q | Do you hold shares in Eli Lilly? |
| 19 | | As a long-tenured employer -- employee |
| 20 | | of the company, do you have any shares in the |
| 21 | | company? |
| 22 | A | Yes. |
| 23 | Q | Do you have -- what kind of -- do you have |
| 24 | | an ownership stake in the company? |
| 25 | A | No. |

Confidential — Sharon L. Hoog, M.D.

```
 1   Q   And how long have you held Lilly shares over the
 2       course of the years?
 3   A   As part of our -- well, the answer to that is
 4       from the first year I worked here, 1992.
 5   Q   Oh, in other words, it's part of a compensation
 6       package; is that what you were going -- is that
 7       where you're headed?
 8   A   Well, its nature has changed over the years, but
 9       yes.
10   Q   And so for the 22 years that you've been there,
11       you've been paid by Lilly income and salary, and
12       you've also been paid, in part, with shares in
13       the company; correct?
14   A   Shares and/or options, yeah.
15   Q   So you must surely keep track of how the
16       company is doing financially in some small
17       respect over the years; fair?
18   A   I casually keep track of that.  It really
19       doesn't matter, because I love my job and I go
20       to work, and the stock does what the stock does.
21   Q   I haven't asked you that.  I just want to -- I
22       want to get an understanding of what your
23       knowledge base is so that I can avoid further
24       objections.
25           Generally speaking, you're aware, because
```

```
 1  A    Yes.
 2  Q    Okay.  Do you see the country listed, Algeria
 3       there?
 4  A    Yes, I do.
 5  Q    And there are four entries for Algeria; correct?
 6  A    Yes.
 7  Q    And you see the very right-hand column says,
 8       "Reason for withdrawal/rejection"; right?
 9  A    Yes.
10  Q    And what are the two entries for Algeria that
11       are in that column?  Can you read them for the
12       jury, please?
13  A    Yes.  "Insufficient future profitability" and
14       "insufficient future profitability."
15  Q    Thank you, Doctor.
16            Doctor, what is your current salary at Eli
17       Lilly?
18            MS. JONES:  Matt, I'm going to make the
19       same objection to that question that I made
20       yesterday, and direct the witness not to answer
21       on the ground that it's confidential personnel
22       information.
23            MR. LECKMAN:  State your privilege, please.
24            MS. JONES:  I think I've already said the
25       basis for the objection is that it's
```

```
 1      confidential personnel information.
 2           MR. LECKMAN:  Now, I understand you stated
 3      a basis for an evidentiary objection or what you
 4      believe to be an evidentiary objection.  But I'm
 5      asking you to articulate the basis for your
 6      privilege if you're instructing this witness not
 7      to answer.  Can you articulate a privilege?
 8           MS. JONES:  I think I've already
 9      articulated the reason that I'm instructing
10      witness not to answer.  I don't want to spend
11      your time going back and forth over that.
12           MR. LECKMAN:  No, I understand, and I don't
13      want to waste my time either.  But when you
14      instruct a witness not to answer, you have to
15      state a privilege, so that's why -- and I have
16      to give you the opportunity to state a
17      privilege.  So if you're not going to articulate
18      a privilege, the question stands.
19           MS. JONES:  Well, as does my objection and
20      my instruction to the witness.
21   Q  Will you answer that question, Doctor?
22   A  I've been advised not to.
23   Q  I understand.
24           Doctor, can we agree that Lilly has an
25      obligation to be truthful and accurate in its
```

```
 1     saying.
 2           It's not that it's not important.  It's
 3     that in treating an individual patient, knowing
 4     that that could be a symptom of discontinuation
 5     is what's impor- -- more important.
 6           MR. LECKMAN:  Move to strike the
 7     nonresponsive portion of the question, which was
 8     almost all of it.
 9           MS. JONES:  Well, I'm going to --
10  Q  Could you tell me --
11           MS. JONES:  Hold on.  I'm going to oppose
12     that motion.  Go ahead.
13  Q  Can you tell me, Doctor, yes or no, when you
14     read the language in the U.S. PI from 2007
15     relating to the 1 percent or greater, as a
16     clinician, do you have any way to know whether
17     or not the incidence is 2 percent or 50 or 80 or
18     75 or 35?
19  A  No.
20  Q  Do you have any way to know?
21  A  No.
22  Q  You don't, do you?
23  A  Not from that statement.
24  Q  Okay, let's turn to page 232.  You should be
25     looking at Appendix 2.3.
```

Confidential — Sharon L. Hoog, M.D.

```
 1

 2            ACKNOWLEDGMENT OF DEPONENT

 3

 4            I, _____, do

 5   hereby certify that I have read the

 6   foregoing pages, and that the same is

 7   a correct transcription of the answers

 8   given by me to the questions therein

 9   propounded, except for the corrections or

10   changes in form or substance, if any,

11   noted in the attached Errata Sheet.

12

13

14       _____

15       SHARON L. HOOG, M.D.          DATE

16

17

18   Subscribed and sworn
     to before me this
19   _____ day of _____, 20____.

20   My commission expires:_____

21

         _____
22   Notary Public

23

24

25
```