David E. Stanley (SBN 144025)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080
dstanley@reedsmith.com

Michael X. Imbroscio (pro hac vice)
Phyllis A. Jones (pro hac vice)
Kathleen E. Paley (pro hac vice)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5868
Facsimile: (202) 778-5868
mimbroscio@cov.com
pajones@cov.com
kpaley@cov.com

Attorneys for Defendant
Eli Lilly and Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN HEXUM AND NICK HEXUM, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, an Indiana corporation, <br><br> Defendant. | Case No.: 2:13-cv-2701 SVW-MANx <br> Case No.: 2:13-cv-2702 SVW-MANx <br><br> **DEFENDANT'S OPPOSITION TO MOTION FOR SANCTIONS** <br><br> Date:      April 27, 2015 <br> Time:     2:30 p.m. <br> Location: Courtroom 6 <br> Judge:    Hon. Stephen V. Wilson |
| CLAUDIA HERRERA and PETER LOWRY, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, an Indiana corporation, <br><br> Defendant. | |

Case No.: 2:13-cv-2701 SVW-MANx
Case No.: 2:13-cv-2702 SVW-MANx
DEFENDANT'S OPPOSITION TO MOTION FOR SANCTIONS

At the outset of this litigation, the Court permitted a "lengthy discovery period" and directed the parties to raise promptly any discovery issues requiring resolution. *Herrera*, Dkt. # 40, at 1. Plaintiffs' motion reflects a fundamental disregard for that admonition. Months after the close of discovery and a mere two weeks before trial, Plaintiffs seek to impose extraordinary, potentially merits-determinative sanctions on Lilly for discovery responses and objections served over a year ago. Plaintiff does not dispute their exceptional delay in raising this issue. Indeed, they cannot, and this delay alone is a sufficient basis to deny their motion. Even if Plaintiffs could overcome this threshold timeliness bar, there is a more fundamental basis on which this Court should decline their invitation to impose sanctions. Lilly's good faith objections and responses to Plaintiffs' facially overbroad and vague discovery were substantially justified. Moreover, Plaintiffs cannot establish prejudice in connection with these early market research documents unrelated to Plaintiffs' treatment with Cymbalta or the ultimate labeling of the medicine on the risk of discontinuation symptoms.

Plaintiffs have similarly failed to demonstrate entitlement to the relief they seek in connection with Lilly's transmission of its second privilege log in these cases. Lilly's privilege log was delayed by no more than 33 days — not six months, as Plaintiffs suggest — and Lilly has taken immediate steps to provide the log and any documents appropriate for disclosure. Under the Ninth Circuit standard set out in *Burlington Nort. & Santa Fe Ry. v. Dist. Court, Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005), the record is inadequate to support the grossly disproportionate relief that Plaintiffs request.

## I. BACKGROUND

Plaintiffs' motion purports to outline the history of discovery in this litigation. To address the critical omissions in Plaintiffs' account, Lilly submits the following outline of the key discovery events to date, which bears out the impropriety of the extraordinary relief Plaintiffs seek.

**A.     Lilly's Responses to Plaintiffs' Distinct Discovery Requests**

**1.     Lilly responds to *Herrera/Hexum* Requests Nos. 64 & 162**

On October 21, 2013, this Court entered a scheduling order governing *Herrera* and *Hexum*. Civil Minutes - General, *Herrera*, Dkt. 40; Civil Minutes - General, *Hexum*, Dkt. 36. In adopting the parties' proposed discovery deadline, the Court emphasized its expectation that due to the "lengthy discovery period" set out by the Court's Order, that "all discovery (fact and expert) shall be COMPLETED by no later than December 13, 2014" and that if "any discovery motions are necessary, the parties shall ensure that they are calendared and heard by the magistrate judge sufficiently in advance of" the discovery end date to permit actual production. Civil Minutes - General, *Herrera*, Dkt. 40, at 1. In short, the Court's Order directed that the parties should raise and resolve discovery issues promptly through the established Local Rule 37 procedures to ensure compliance with the established pretrial deadlines.

On October 15, 2013, Plaintiffs served 167 requests for production and 19 interrogatories on Lilly. These requests ranged widely over every area of Lilly's functioning, requested information on drugs not at issue in this matter, including some not even manufactured by Lilly, and were in many cases fatally vague and overbroad. *See, e.g.*, Wisner Decl. Ex. 1 at 15, RFP 20, Pls.' First Requests for Production ("All DOCUMENTS RELATING to the design of CYMBALTA not otherwise responsive to the requests herein."); RFP 124, *id.* at 30 ("All DOCUMENTS that refer to Paxil [a non-Lilly drug] and withdrawal, discontinuation, dependence or addiction).

Lilly proposed a tiered response schedule for these voluminous requests. Plaintiffs agreed to that schedule. In December 2013 correspondence, Lilly set forth several key points concerning its first set of anticipated responses and production:

First, at least 33 of the requests for production were best answered by two extensive productions that Lilly had previously made in *Carnes v. Eli Lilly and Company*, a case then pending in the United States District Court for the District of South Carolina raising virtually identical claims to those alleged in *Herrera* and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Hexum* and brought by identical counsel of record.[1]  Those productions, made in July and October 2013, comprised 90,090 documents totaling 1,725,262 pages.  *See* Reynolds Decl. ¶ 7.  These productions were generally referred to in Lilly's December 2013 correspondence and in subsequent communications as the "IND/NDA productions" because they included materials from the Cymbalta Investigational New Drug Application and New Drug Application.  The productions also included "related supplements and amendments; reporting obligations including Periodic Safety Updates Reports, adverse event reporting data, and risk management plans; correspondence with the FDA regarding draft and implemented labeling; copies of draft and final marketing and promotional materials; and clinical trial materials."[2]  *See* Reynolds Decl. Ex. 1.

Second, Lilly noted that it would provide documents responsive to six requests for production to the extent that they dealt with Plaintiffs' prescribing physicians rather than physicians as a whole.  *See id.*

Third, Lilly intended to object to 51 of the remaining requests for production.  *See id.*

On December 16, 2013, Lilly provided formal responses to the first tier of production requests ("Tier 1 Responses"), consistent with the parties' agreed-upon schedule.  On March 4, Lilly provided responses to the second tier of requests ("Tier 2 Responses"), consistent with the parties' agreed-upon schedule.  The Tier 1 and Tier 2 Responses referred Plaintiffs to the two earlier productions to which Plaintiffs' counsel already had access.

As part of its Tier 2 Responses, on March 4, 2014 Lilly provided objections and responses to the two requests for production that are the subject of Plaintiffs' motion:

---

[1] The district court granted Lilly's motion for summary judgment in the *Carnes* case on December 16, 2013.  *Carnes v. Eli Lilly & Co.*, 2013 WL 6622915 (D.S.C. Dec. 16, 2013).

[2] Lilly updated these productions in August 2014 to include materials added to the IND/NDA files from 2013 through April 2014.  The supplemental production was 19,846 pages.  *See* Reynolds Decl. ¶ 7.

Case No.: 2:13-cv-2701 SVW-MANx
Case No.: 2:13-cv-2702 SVW-MANx          - 3 -
DEFENDANT'S OPPOSITION TO MOTION FOR SANCTIONS

Request No. 64 sought "[a]ll DOCUMENTS that RELATE TO or reflect marketing or sales strategies or plans that CONCERN CYMBALTA." (Wisner Decl., Ex. 1, at 22.) Lilly objected to the overbreadth and vagueness of this request, as well as its lack of relevance to the matters at issue in this litigation. Notwithstanding those objections, Lilly agreed to produce Cymbalta annual brand plans for 2008 to 2012 that could be "located through a reasonably diligent search of the documents within its possession, custody, and control." Consistent with this agreement, Lilly produced responsive documents at CYM-01725263-CYM-01726083. This production included over 800 pages of documents related to Cymbalta marketing activities.

Request No. 162 sought "[a]ll DOCUMENTS relating to any integrated marketing campaign for CYMBALTA that mention the following (or any derivative term) in connection, in any way, to Cymbalta: withdrawal, discontinuation, dependence, habit-forming, addiction, including but not limited to" 12 sub-categories, all expansively worded and facially overbroad. Lilly objected to this request outright as overly broad, unduly burdensome, vague, and ambiguous.

In responding to both of these expansive requests, Lilly made clear for what documents it intended to search in connection with Request Nos. 64 and 162 and where it intended to maintain an objection. In the ensuing nine months prior to the close of discovery, Plaintiffs never raised any significant concerns regarding Lilly's objections to these requests or sought to utilize this Court's established Local Rule 37 procedures to discuss how the parties might agree to limit or narrow these requests to address Lilly's objections.

### 2. The *Ali* and *Hagan-Brown* (E.D. Va.) Document Requests

On February 4, 2015, Plaintiffs in two related cases served Requests for Production in *Ali v. Eli Lilly & Company*, 1:14cv-01615-AJT-JFA (E.D. Va.) and *Hagan-Brown v. Eli Lilly & Company*, 1:14cv-01614-AJT-JFA (E.D. Va.), both pending in the Eastern District of Virginia. Plaintiffs cite one of those requests — Request No. 80 — as the basis for their sanctions claim.

1  Request No. 80 is not identical in content to the Requests for Production at issue in
2  these cases.  Nor does Request No. 80 suffer from the same facially objectionable
3  scope and ambiguity that rendered the Request No. 64 and Request No. 162 in the
4  *Herrera* and *Hexum* matters largely impervious to response.  Instead, Request No. 80
5  sought information more narrow in scope:  "all market surveys and focus group
6  results/summaries for CYMBALTA."  *Id.* at 4.  In response to this more limited
7  request, Lilly agreed that it would produce "market surveys and related materials
8  concerning Cymbalta and discontinuation-emergent adverse events," and did so.  *See*
9  Wisner Decl. Ex. 5 at 30-31.  Although Plaintiffs describe 123 produced documents
10 that they claim relate to "Lilly's marketing of Cymbalta" and were not earlier
11 produced, they cite only eight in justifying the extraordinary relief sought in their
12 motion.  Pls.' Mo. at 18.

      **B.**     <u>Lilly's Privilege Log Transmissions</u>

          **1.**     <u>**Plaintiffs' Second Set of Requests for Production**</u>

15       Plaintiffs omit any mention of the central procedural detail that chiefly explains
16 the production timeline provocatively described in their motion.  Pls.' Mo, at 8-10.
17 On September 19, 2014, three days before the expert disclosure deadline established
18 in the Court's October 2013 Scheduling Order, Plaintiffs served their second set of
19 document requests.  Reynolds Decl. Ex. 2  In those requests, Plaintiffs sought for the
20 first time the complete custodial files of 61 current and former Lilly employees.  *Id*.
21 Recognizing the challenges of satisfying this belated, expansive request at the close of
22 discovery and mindful of the Court's admonition that discovery was to be completed
23 by December 13, Lilly (1) advised Plaintiffs of its intention to object to the scope of
24 Plaintiffs' custodial file requests and (2) proposed to produce the email files of nine
25 custodians based upon a targeted list of search terms arising from Plaintiffs' specific
26 claims.  Reynolds Decl. Ex. 3.  Lilly proceeded with this collection and production (a
27 series of productions over the course of 9 days, referred to collectively as the
28 "December 2014 Custodial Production") after conferring with Plaintiffs.  Reynolds

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Decl. ¶ 5.  This production included the email files of three Lilly employees for whom Plaintiffs had served deposition notices:  Drs. Sharon Hoog and David Perahia and Sara Mescher.  As Plaintiffs openly acknowledge in their motion, Pls.' Mo., at 9-10, Lilly produced over 14,000 documents covering over 650,000 pages over the course of nine days and in advance of these depositions to ensure Plaintiffs' ability to examine those witnesses about the contents of their custodial files.  Lilly undertook this effort despite the lateness and burden of Plaintiffs' custodial file request.

### 2. Lilly's First and Second Privilege Logs

On September 29, 2014, Lilly transmitted to Plaintiffs its first privilege log, consistent with the provisions of the Stipulated Protective Order.  Reynolds Decl. at ¶ 6.  As of that date, Lilly had produced approximately 1.7 million pages of documents, reflecting responsive documents from the Cymbalta IND/NDA files and internal materials relating to Standard Operating Procedures for various Lilly functional areas.  *Id.* at ¶ 7.

Under the terms of the Stipulated Protective Order, Lilly's second privilege log relating to the December 2014 Custodial Production was due March 5,  2015.[3]  On April 6, 2015, at 11:53 p.m. Eastern time, Plaintiffs' counsel wrote to Lilly's counsel, noting that Lilly had not yet produced a privilege log for documents which Lilly had previously identified as privileged by inserting "placeholder" pages in its document production.  Reynolds Decl. Ex. 5.  Lilly provided its log the next evening, on April 7, 2015.  Reynolds Decl. Ex. 6.  Treating Plaintiff's counsel's letter as a challenge to Lilly's privilege assertions, Lilly also immediately began to re-review its privilege assertions for the 625 documents identified in Plaintiff's counsel's letter.  Reynolds Decl. ¶ 10.

---

[3] Because the December 2014 Custodial Production was made over the course of several days, a log for the last of the withheld documents would not have been due until March 11, 2015.  For the sake of simplicity in connection with this motion, however, and because Lilly provided a single log for the December 2014 Custodial Production, Lilly assumes that the log was due on March 5, 2015.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Upon reviewing the 625 documents identified by Plaintiffs' counsel, the vast majority of which had included Lilly's inside or outside counsel as recipients and thus were placed on the initial log, Lilly agreed that it would not assert a privilege over 535 of those 625 documents despite the involvement of lawyers in the communications. Reynolds Decl. ¶¶ 11-12. Lilly will produce those documents to Plaintiffs on April 27, 2015. Reynolds Decl. at ¶ 13. Thus, Lilly will produce to Plaintiffs the large majority of the documents they have contested, eliminating the need for the significant sanction they have sought before this Court.

## II.   ARGUMENT

### A.   Lilly Properly Objected and Responded to Plaintiffs' *Herrera/Hexum* Requests Nos. 64 and 162.

It is undisputed here that Lilly explicitly made objections to Request Nos. 64 and 162, stated explicitly its intended production, and otherwise maintained its objections. On these facts, Lilly submits that Plaintiffs cannot make the requisite showing of a discovery violation triggering the drastic sanctions the seek under Rule 37.

Even if Plaintiffs could overcome this barrier, the record confirms that Lilly's actions here were reasonable and do not support sanctions under Rule 37. "Under the explicit text of the Rule, sanctions are unwarranted where the purported discovery violation is "substantially justified or [] harmless." Fed. R. Civ. P. 37(c)(1). "Among the factors that may properly guide a district court in [making this] determin[ation] . . . are (1) prejudice or surprise to the party [moving for sanctions], (2) the ability of that party to cure the prejudice, (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed Appx. 705, 713 (9th Cir. 2010). "Other factors courts have considered in determining whether [] sanctions should be imposed are the importance of the evidence . . . and the validity of the reason offered for failing to timely disclose the evidenc[e]." *Volterra Semiconductor Corp. v. Primarion, Inc.*, 2012 WL

5932733, at *6 (N.D. Cal. Nov. 27, 2012).  Then, before imposing any sanction, courts must consider (1) the public's interest in expeditious resolution of litigation; (2) their need to manage their dockets; (3) risk of prejudice to the movant; (4) public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.  *See, e.g.*, *Macias v. Perez*, 2011 WL 2669475, at *2 (S.D. Cal. July 7, 2011).  Even where late production of voluminous documents or spoliation has occurred, the kinds of merits-determining sanctions as sought here are not warranted, and there is nothing in this record that could come close to supporting such a drastic set of sanctions.  *See Keithley v. Homestore.com, Inc.*, No. C-03-04447 SI(EDL), 2008 WL 4830752, at *9 (N.D. Cal. Nov. 6, 2008).

Here, Lilly's objections to Plaintiffs' expansive and vague discovery requests were substantially justified, and Plaintiffs' failure to raise any concerns regarding those objections counsels strongly against their request for sanctions.  Moreover, Plaintiffs have not demonstrated prejudice arising from the eight documents given that they do not bear on Plaintiffs' treatment with Cymbalta, alleged injuries, or, indeed, the labeling on discontinuation risk that was later adopted in the Cymbalta Physician's Package Insert when the medicine was approved.

### 1. Lilly's objections and responses to Request Nos. 64 and 162 were substantially justified.

As noted above, Lilly made timely, good faith objections to Plaintiffs' Request Nos. 64 and 162, both of which were facially overbroad.  *See* Wisner Decl. Ex. 2.  Indeed, Request No. 162, over 200 words long and with 12 different subparts, was so expansive, ambiguous, and convoluted that it was virtually impossible for Lilly to formulate a targeted response.  Although Plaintiffs insist that Lilly offers no explanation for why the eight documents at issue here were not produced in *Herrera* and *Hexum*, they cannot seriously contest that Lilly expressly articulated what it intended to produce in response to Request No. 64 and objected outright to the unwieldy parameters of Request No. 162.

Lilly's production in *Ali* and *Hagan-Brown* does not undermine the propriety of Lilly's objections in *Herrera* and *Hexum*. Request No. 80 in *Ali* and *Hagan-Brown* was a markedly different request — narrower in scope and, importantly, amenable to reasonable response. The same cannot be said of the *Herrera* and *Hexum* requests at issue here.

### 2. Plaintiffs' delay justifies denial of their motion.

Whatever Plaintiffs' belated complaints now about Lilly's objections and responses to Request Nos. 64 and 162 served over a year ago, it is uncontested that they never invoked this Court's well-established Local Rule 37 process to address those concerns with Lilly and, if necessary, the Court. Plaintiffs failed to raise any significant concerns about Lilly's objections and responses to these requests even as they escalated a series of other issues that were eventually heard and resolved by the Court. Reynolds Decl. ¶ 14.

Under Ninth Circuit law, such a failure to trigger these procedures is sufficient to bar Plaintiffs' request for sanctions. Indeed, the Ninth Circuit has held that Rule 37 sanctions are inappropriate where the party seeking them "made no effort whatsoever" to address the subject evidence, "even though they continued to use the ongoing discovery process to compel production of other evidence" on related topics, and thus, "they were obviously able to take steps they thought necessary to contend with [the evidence] at trial." *See Lanard*, 375 F. App'x at 713. Thus, Plaintiffs should not be heard at this late date to complain about the propriety and sufficiency of discovery objections responses provided nearly a year ago. Lilly served objections and responses to RFP Nos. 64 and 162, specifying precisely what it would produce, and made its productions subject to those objections. Plaintiffs did not file a motion to compel at that point, and therefore waived their right to seek redress for Lilly's supposed failure to include market surveys in its responses. *See Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) (court did not abuse its discretion in failing to grant relief to party that did not respond to opposing party's

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

objections to requests for production and which failed to move to compel production during discovery period); *Rieck v. Borg*, 145 F.3d 1340 (9th Cir. 1998) ("Although Rieck contends that he was dissatisfied with the timeliness and substance of Borg's responses, he did not object to the responses or move to compel responses prior to the March 1st discovery deadline."); *see also Cont'l Indus., Inc. v. Integrated Logistics Solutions, LLC*, 211 F.R.D. 442, 444 (N.D. Okla. 2002) (rejecting motion to compel as untimely where "defendants informed Plaintiff in April 2001 that they objected to production of the documents at issue," but Plaintiff did not move to compel until over a year later); *Butler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) ("A party cannot ignore available discovery remedies for months and then, on the eve of trial, move the court for an order compelling production."); *cf. Nanayakkara v. California State University, Fullerton*, 60 F.3d 834 (9th Cir. 1995) (court does not abuse its discretion in denying motion to compel as untimely where defendants' alleged failure to produce documents occurred more than four months earlier). Plaintiffs' ability to pursue Rule 37 sanctions two weeks before trial on a discovery issue they never chose to raise during the allocated discovery period is similarly foreclosed.

### 3. Plaintiffs have not demonstrated prejudice.

Plaintiffs' claims of prejudice arising from the production of the eight documents that are the subject of their motion are similarly without merit.

<u>First</u>, there is no basis for Plaintiffs' claim that their experts were fundamentally prejudiced by the absence of these documents. Indeed, Dr. Joseph Glenmullen, Plaintiffs' principal causation expert, reviewed no documents in advance of the preparation of his initial, general causation expert report in these cases — including the approximately 1.7 million pages of documents produced by Lilly well in advance of the expert report deadline. Dr. Glenmullen acknowledged at his deposition that he had not reviewed Lilly documents that he himself deemed necessary to form a complete opinion about the adequacy and veracity of the Cymbalta label. Apparently unaware that Lilly had long earlier produced Cymbalta's clinical trial reports,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  protocols, FDA correspondence and labeling materials, and marketing materials, Dr.
2  Glenmullen has repeatedly testified that he had neither received nor reviewed these
3  documents.  Reynolds Decl. Ex. 8.  In the face of this admission by Plaintiffs' central
4  causation expert that he had not reviewed some of the core materials related to
5  Cymbalta's development and approval, Plaintiffs' assertion that eight documents
6  reflecting 13-year old market research produced in separate litigation would have
7  materially altered the opinions of Plaintiffs' experts cannot withstand scrutiny.

8        Second, Plaintiffs cannot credibly claim that they were hindered in their ability
9  to ask questions of Lilly's witnesses about Cymbalta's marketing in the context of
10 discovery.  Contrary to Plaintiffs' suggestion, Lilly made an extensive production on
11 the marketing strategy for Cymbalta, including hundreds of pages of brand plan
12 strategy documents; produced a Rule 30(b)(6) witness on sales training issues; and
13 produced three Lilly witnesses in their individual capacities to whom Plaintiffs'
14 counsel could have presented questions regarding marketing issues.  Reynolds Decl. ¶
15 16.  Moreover, Plaintiffs elected of their own accord to depose only one of Lilly's
16 designated experts, Dr. Karen Becker, Lilly's regulatory and labeling expert.
17 Plaintiffs offer no explanation for why the eight documents cited in their motion
18 would have influenced their questioning of Dr. Becker.  As to the remaining Lilly
19 expert witnesses, these documents could not, of course, have made any difference in
20 depositions Plaintiffs chose not to take.

21       Nor is Plaintiff correct that these documents were necessary to rebut a
22 suggestion that antidepressant discontinuation symptoms was "something physicians
23 did not seriously consider or as something that was not important."  Pls. Mo., at 17.
24 Lilly has never suggested that antidepressant discontinuation symptoms are
25 "unimportant."  Rather, Lilly has argued that the risk of discontinuation symptoms is
26 well-documented in the peer-reviewed clinical literature, well-understood by
27 prescribing physicians, and adequately labeled in the Cymbalta prescribing
28 information.  *See, e.g.*, Am. Psychiatric Ass'n, Practice Guideline for the Treatment of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Patients with Major Depressive Disorder, 20, 40 (3d ed. 2010) (cautioning that "abrupt discontinuation of SNRIs [Serotonin-Norepinephrine Reuptake Inhibitors] should be avoided wherever possible" because discontinuation symptoms may occur); *see also McDowell v. Eli Lilly & Co.*, No. 13-cv-3786, 2014 WL 5801604 (S.D.N.Y. Nov. 7, 2014) (holding the Cymbalta label adequate as a matter of law).

Finally, Plaintiffs' claim that the use of these eight documents would have materially affected the prescriber depositions in this case is, at best, speculative and insufficient to justify sanctions. Both Ms. Herrera's and Ms. Hexum's prescribers testified extensively about their independent knowledge of the discontinuation risks of Cymbalta and similar antidepressants, and it is hard to imagine how reference to 13-year old market research documents could have conceivably impacted that knowledge.

### B. Lilly's Brief Delay In Producing a Privilege Log Does Not Justify the Requested Sanctions.

As outlined above, Lilly's privilege log on the December 2014 Custodial Production was due on March 5, 2015, 90 days after the production of documents. Although a draft privilege log had been prepared, it was not finalized and served by March 5. Reynolds Decl. ¶ 17. As soon as Plaintiffs' counsel specifically requested the log, in a letter to Lilly on April 6, 2015, Lilly immediately finalized and produced the privilege log the next day. Reynolds Decl. ¶ 9. Although Plaintiffs had not requested that Lilly do so, Lilly also immediately began to re-review the 625 documents identified in Plaintiffs' counsel's letter that had been withheld on the basis of privilege, in order to determine whether, in light of the impending trial date, Lilly would withdraw some of its privilege assertions. Reynolds Decl. ¶ 10. That accelerated additional review involved review efforts by ten attorneys, and resulted in Lilly's voluntary withdrawal of privilege claims for 535 documents where, although the vast majority of communications involved Lilly's inside or outside lawyers, Lilly decided to take a conservative position on the application of the privilege. *Id.*

Far from "sandbagging" Plaintiffs, as they assert, these efforts reflect Lilly's diligence and good faith: when Lilly realized its delay in the production of its privilege log, it not only provided the log but undertook its own resource-intensive efforts to narrow its privilege assertions ahead of trial. The Court should not sanction such conduct, which would only discourage future litigants from undertaking similar voluntary reviews of privilege assertions, and would unfairly punish litigants who act in good faith to remedy inadvertent errors. *Cf. Reynolds v. City and County of San Francisco*, 576 Fed. Appx. 698, 702 (9th Cir. 2014) ("The failure to produce was inadvertent, and we deny his request for sanctions.").

Moreover, governing law simply does not support the imposition of sanctions here, and certainly not the draconian sanctions Plaintiffs seek. As the Ninth Circuit has made clear, there is no "*per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Burlington Nort. & Santa Fe Ry. v. Dist. Court, Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Instead, a court considering whether a party's late production of a privilege log has waived its privileged assertions must consider (1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged," (2) "the timeliness of the objection and accompanying information about the withheld documents," (3) "the magnitude of the document production," and (4) "other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard." *Id.* Those factors are to be judged in a "holistic reasonableness analysis." *Id.*

Lilly's compliance with the first factor is clear. The *Burlington* court explained that "providing particulars typically contained in a privilege log is presumptively sufficient" to find that a producing party has satisfied the first factor. *Id.* In this case, Lilly's log lists the date of the document withheld, its author, recipients, cc: recipients, a description of the communication, and the privilege asserted. *See* Wisner Decl. Ex. 14. Thus, Lilly has satisfied the first *Burlington* factor. *See Jumping Turtle Bar and*

*Grill v. San Marcos*, No. 10-CV-270, 2010 WL 4687805 (S.D. Cal. Nov. 10, 2010) (finding the first *Burlington* factor satisfied where "the log provides much more than a boilerplate objection as it provides a brief description of the documents, the author, the date of the document, at least one recipient, and the privilege[s] claimed for each document").

The second *Burlington* factor, timeliness, also weighs in Lilly's favor. While Lilly's privilege log was not produced within the 90-day requirement of the Protective Order, Lilly rectified its error immediately upon notification, ultimately providing the privilege log only about a month part the deadline, not six months, as suggested by Plaintiffs. Reynolds Decl. ¶ 9. Cases from this circuit finding waiver have only done so in the face of much lengthier delays, in which there is no indication that a party's error was inadvertent. *See Burlington*, 308 F.3d at 1149 (waiver where log was produced five months late); *Carl Zeiss Vision Intern. Gmbh v. Signet Armorlite Inc.*, 2009 WL 3632388 at *4 (S.D. Cal. Dec. 1, 2009) (finding waiver where log arrived 9 months late). Here, too, Lilly's production contained "placeholder" pages indicating that documents had been withheld on the basis of privilege. Plaintiffs were therefore on notice that documents had been withheld, a far cry from cases in which parties seeking discovery do not even know that *any* documents are being withheld on the basis of privilege until they receive a privilege log.

The third *Burlington* factor, which concerns the magnitude of the document production, also does not support Plaintiffs' argument. The third factor recognizes that "particularly in discovery-intensive litigation, compiling a privilege log within 30 days may be exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting in good faith." 408 F.3d at 1149. In this case, the Protective Order allowed both sides 90 days for production of a privilege log, implicitly acknowledging the large volume of discovery. It is undisputed that that this is a large, discovery-intensive case, in which Lilly has produced more than 2.8 million pages of documents in response to over 200 requests for production served by

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

plaintiffs.  Thus, the third factor provides no support for Plaintiffs' contention that sanctions against Lilly are appropriate.

The final *Burlington* factor, a catch-all for "other particular circumstances," mitigates in Lilly's favor as well.  As other courts have recognized, where a producing party provides its privilege log quickly after its failure to make privilege assertions is brought to its attention, it is appropriate to hold that no *Burlington* waiver is appropriate.  *See Jumping Turtle Bar and Grill*, 2010 WL 4687805 at *4 (explaining that the fourth *Burlington* factor does not require a finding of waiver where "the City produced the privilege log one week after its failure to assert the privilege was brought to its attention").  Lilly did precisely that here, producing its log within 24 hours after being notified of its inadvertent failure to do so.  Moreover, Lilly's good faith is highlighted by the fact that Lilly immediately undertook an additional review of its privilege assertions in order to narrow the set of withheld documents.  Under the "holistic reasonableness analysis" required by *Burlington*, therefore, this Court should decline to find that Lilly has waived the privilege protections for documents identified in its privilege log that it has not yet voluntarily produced.

### III.  CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Sanctions as to both Lilly's production of market surveys and to Lilly's privilege log.

DATED:  April 24, 2015

Respectfully Submitted,

/s/ David E. Stanley
David E. Stanley
REED SMITH LLP

Michael X Imbroscio (*pro hac vice*)
Phyllis A. Jones (*pro hac vice*)
Kathleen E. Paley (*pro hac vice*)
COVINGTON & BURLING LLP

Attorneys for Defendant
ELI LILLY AND COMPANY

Case No.: 2:13-cv-2701 SVW-MANx
Case No.: 2:13-cv-2702 SVW-MANx          - 15 -
DEFENDANT'S OPPOSITION TO MOTION FOR SANCTIONS